21 So.2d 113

Ex parte MYERS.

6 Div. 312.

Supreme Court of Alabama.

Jan. 18, 1945.

Rehearing Denied March 1, 1945.

Arthur Fite, of Jasper, for petitioner.

Curtis & Maddox and Carl A. Elliott, all of Jasper, for respondent.

FOSTER, Justice.

This is a petition to this Court for a writ of mandamus to the Judge of the Circuit Court, in Equity, in Walker County, commanding him to vacate, annul and set aside a decree rendered by him December 7, 1944, and to expunge the same from the records of the court, for that the judge had no power to render the decree. That is the correct method to obtain such relief. The question therefore is whether the judge had the power to render such a decree.

On August 29, 1944, on issue joined by bill and answer, and submitted on evidence taken before the court, a decree was rendered, one clause of which is as follows:

"It is, therefore, the order, judgment and decree of the court, that the temporary writ of injunction heretofore granted, insofar as the same applies to the draining and use of the mouth and opening to said mine for the removal of coal, be and the same is hereby dissolved, and the permanent injunction prayed for as to the re-opening and use of said mine and the removal of water therefrom, be and the same is denied.

"It is the further order, judgment and decree of the court, that the defendants Fletcher Miller and Dan Arker, their agents, servants and employees, are restrained and permanently enjoined and prohibited from making any opening for the purpose of removing any coal or other mineral, and from mining any coal within a distance of fifty feet from under any of

the permanent improvements referred to herein applying to any building, either residence, barns, or chicken houses, that have heretofore been constructed on said lands."

Complainant, this petitioner, owned the surface and the respondents owned the mineral rights in a plot of land of about three acres, on which complainant had a residence, barn and poultry houses. There was an opening in it extending to the main entry, and onto "rooms" from which coal had been mined. Operations had ceased for sometime, and water had accumulated in the old entry and rooms. Respondents proposed to pump out that water and extend operations into a new room not under complainant's land without doing any mining under his land. Complainant sought an injunction to prevent the use of the opening for removal of coal, and the pumping of water as affecting complainant's surface water supply, and from mining coal under said land, resulting in the decree referred to above.

The modification of that decree entered on December 7, 1944, in so far as here material, is as follows:

"It is the order, judgment and decree of the court that petitioners herein be and they are hereby permitted and allowed to construct an air course southward parallel to the mine entry, as described in the petition, commencing on the south side of the old room worked out by lessees, before these petitioners took charge of said mine, and drive same southward to a new room turned off to the west from the mine entry. This air course to be, to-wit, twenty feet west of the entry and run southward parallel thereto and, to-wit, fifteen feet wide. The construction of this air course will go through coal at the south side of said old room for four or five feet, which is within the fifty feet limit from the chicken houses of complainant, which was prohibited in a decree of this court entered on the 29th day of August, 1944.

"It is further ordered, adjudged and decreed that the construction of said air course, as permitted herein, shall not be held to be in violation of said injunction as set out in said decree of August 29, 1944."

The decree of August 29, 1944, was unquestionably a final decree. The petition by respondents to modify that decree which resulted in that of December 7th, supra, was filed November 29, 1944. That was three months after the final decree was entered. It was therefore not filed within thirty days as required by Equity Rule 62, Code 1940, Tit. 7, Appendix.

There are two theories which are thought to be sufficient to justify the modification of that final decree. One is that the decree was open for modification because the complainants had within said thirty day period applied for a rehearing because the decree was erroneous in not finding that the mining of coal had been abandoned, and in not holding that defendants should be enjoined from pumping out the water, and said motion of complainant was heard by the court, and no ruling had been made on it when defendants filed their petition. The theory being that pending consideration of complainant's motion the decree was in fieri, and the power was thereby reserved in the court to make any sort of modification. Housing Authority v. Abney, 241 Ala. 256, 2 So.2d 428.

But that case and those cited and others were upon the question of the running of the limitation of the time in which to appeal. The reference to the power of the court, by reason of the motion, to make proper orders relates to those which are germane to the motion then pending. That is made plain by the line of cases holding that the court cannot entertain an amendment to a motion for a new trial to bring in new matter filed more than thirty days after the date of the judgment. Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388 (20); Atlantic Coast Line R. Co. v. Burkett, 207 Ala. 344, 92 So. 456; Sorsby v. Wilkerson, 206 Ala. 190, 89 So. 657; Virginia Bridge Iron Co. v. United States Shipping Board, 215 Ala. 321, 110 So. 469.

In that respect the same principles apply in equity as at law. Johnson v. Foust, 242 Ala. 659, 7 So.2d 864. Respondents' petition for modification was not germane to complainant's motion for a rehearing.

The petition alleged that down to the "rooms" under complainant's land, which are not to be worked, there had been built and used an air shaft by which the working was ventilated. They propose to open a new room south of complainant's land and west of the entry, and that to ventilate it, it is necessary to build an air course extending from the south side of the old "room" connected with the old vent, to the new room: that to open the air course, it will be necessary to take out coal in the pro-

cess, and that in doing so a part of the work will be within 50 feet from under the chicken house on complainant's land. The petition prayed for an order allowing defendants to construct said air course and to modify the injunction, so as to do so without violating it. The air course now extends from about the opening and parallel with the entry and about 20 feet from it. It was found that to extend the air course to the new room would necessitate taking coal out of its path. The trial judge in answer to the instant petition states that to do so would not be to "mine coal nearer than fifty feet," except for the purpose of operating the air course, and that in opening up the new mining operation, and opening the new room for mining the coal, created a material change of circumstances which necessitated changing the terms of the injunction as originally decreed, which was unforeseen at that time; and that the modification was necessary as a matter of safety for the miners and to comply with the State law.

The decree of modification does more than to declare the meaning and effect of the original decree as authorized under the Declaratory Judgments Act. Boyd v. Garrison, Ala.Sup., 19 So.2d 385(6) ;[1] Avery Freight Lines v. White, 245 Ala. 618, 18 So.2d 394, 400(8) ; Title 7, section 157, Code. It cannot therefore be sustained on that theory.

But there is another theory advanced to sustain the decree which we think is well supported and has application. It is based on the principle—one aspect of which is that the court which has rendered a final decree in the form of a permanent or perpetual injunction in respect to future activities may open and modify it where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable to do so. The principle is thus expressed in United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999: "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need (citing cases). The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. * * * A court does not ab-

dicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S. Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200; Santa Rita Oil Co. v. State Board of Equalization, 112 Mont. 359, 116 P.2d 1012, 136 A.L.R. 757, 765, note; Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172, Annotations p. 1180; 28 Amer.Jur. 494, § 323; 32 Corpus Juris 389, § 659; Jackson Grain Co. v. Lee, 150 Fla. 232, 7 So.2d 143 (6). Many cases are cited in the annotations not necessary here to repeat.

In Sontag Chain Stores Co. v. Superior Court, 18 Cal.2d 92, 113 P.2d 689, 690, it is said that "this is so because the decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree, it has uniformly been held, is always subject, upon proper showing, to modification or dissolution by the court which rendered it. The court's power in this respect is an inherent one." The cases do not always limit the power to meet changed conditions. Ladner v. Siegel, supra; 28 Amer.Jur. 495, note.

This principle has been applied in this State where there is a final decree of divorce which also fixes alimony payable in future installments without limitation of time and without reservation of continuing control. This is on the theory that the decree is continuous in its operation, and for that reason the amount of future installments may be modified on account of a change of circumstances before they become fixed at maturity. Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911; Epps v. Epps, 218 Ala. 667, 120 So. 150. This principle has been often reasserted. Rochelle v. Rochelle, 235 Ala. 526, 179 So. 825. See 8 Ala.Dig., Divorce, ⚖245(1).

The petition in the instant case does not allege a change of conditions and circumstances. But it shows a necessity for a change in the injunction decree which does not seem to have been apparent or considered on the original hearing, and the evidence shows and the court found that it developed as a result of opening the new mining operation, and therefore a new sit-

---

[1] Ante, p. 122

464

uation was presented. The injunction relates to matters of future continuous operation. If at any time the same court finds that on account of such operations it has developed that the injunction according to its exact terms is inequitable, it may modify the same.

This proceeding is not to review the finding of the trial judge in that respect (see Smith v. Smith, 218 Ala. 701, 120 So. 167), but only to expunge his modification decree as being beyond his power. We think it was not beyond his power.

The petition for mandamus is denied.

GARDNER, C. J., and THOMAS and STAKELY, JJ., concur.