**NATIONWIDE AUTO TRANSPORTERS, INC., Plaintiff,**

v.

**MORGAN DRIVEAWAY, INC., Defendant.**

**No. 77 Civ. 5272.**

United States District Court, S. D. New York.

Nov. 30, 1977.

Williamson & Schoeman, New York City, for plaintiff.

Paul D. Borghesani, James B. Buda, Elkhart, Ind., Augello & Pezold, P. C., Huntington, N. Y., for defendant.

LASKER, District Judge.

Nationwide Auto Transporters, Inc. ("Nationwide") moves for a preliminary injunc-

tion restraining Morgan Driveaway, Inc. ("Morgan") from transporting motor homes in secondary movement in "driveaway service" from Goshen, Wakarusa, and Middlebury, Indiana. While Morgan does have authority to transport motor homes in "truckaway service" (Sub-No. 524), Nationwide claims that Morgan does not have the necessary authority from the Interstate Commerce Commission ("ICC") to conduct driveaway operations and that by doing so it is taking work which would otherwise accrue to Nationwide. Morgan answers that it does have the requisite power by virtue of its authority from the ICC to transport "portable shelters" and "campers" and moves to dismiss the claim. The motion to dismiss is denied; the motion for a preliminary injunction is granted.

## I.

■ Morgan moves to dismiss first under Rule 19 of the Federal Rules of Civil Procedure for failure to join a necessary party. Nationwide has authority to conduct the disputed operations only by virtue of an interline agreement with Chandler Trailer Convoy, Inc., and Morgan argues that, since the interests of Nationwide and Chandler are joint, the latter is a necessary party to the litigation. Morgan misconstrues the reach of Rule 19. A party is deemed indispensable under the rule only if, in his absence, (1) the absentee is likely to be harmed, (2) one of the parties may be subject to multiple or otherwise inconsistent obligations, or (3) complete relief cannot be accorded to the parties. There is no reason to believe that either the parties or Chandler would be prejudiced if the action proceeded with the present array. Since Nationwide and Chandler share the same desire of seeing their agreement enforced, Chandler's interests are represented in this suit. Similarly, the identity of interest between Nationwide and Chandler means that Morgan is not likely to be subject to demands from Chandler which are inconsistent with any relief which Nationwide may

be granted. Nor is there reason why the court cannot give meaningful relief to the parties in Chandler's absence.

■ We also reject Morgan's argument that, because Nationwide does not have independent authority to perform the operations in question, it is not a person who has been "injured" within the meaning of 49 U.S.C. § 322(b)(2), the provision under which Nationwide has brought suit. Section 322(b)(2) permits suit by "any person" injured through a violation of ICC rules. The loss of revenue alleged to have been suffered by Nationwide since Morgan began these operations is sufficient evidence of injury (see Affidavit of Allen Herman at ¶ 15), and Morgan has referred us to no authority which would support its narrow construction of the statute.

Finally, Morgan moves to dismiss for lack of subject matter jurisdiction. Section 322(b)(2) permits private suits in federal court only to redress a "clear and patent violation" of ICC rules. Morgan argues that the court does not have jurisdiction since Nationwide has not established such an open violation. We treat this argument as part of the motion for a preliminary injunction since it parallels the issue of plaintiff's likelihood of success on the merits of its claim.

■ Morgan argues that its authorization from the ICC to transport "portable shelters" (Sub-Nos. 119 and 160) and "campers" and "camp coaches" (Sub-No. 524) gives it the right to transport "motor homes" as well. It relies on a number of ICC orders for the proposition that these several types of authority are interchangeable. Nationwide disputes Morgan's interpretation of these orders and contends that two "informal opinions" of the ICC disagree with Morgan's claim that these three categories can be equated.[1]

Morgan argues that the orders in three ICC proceedings indicate that the Commission does not distinguish between motor home and portable shelter authority. *Arco*

1. The ICC's informal opinion is binding on neither the parties nor the Commission. (Letter of J. H. Gray, District Supervisor, ICC Bureau of Operations, Fort Wayne, Ind., Oct. 17, 1977).

*Auto Carriers, Inc. Extension—Elkhart County, Inc.,* No. MC—52657 (Sub-No. 733) (Nov. 29, 1976); *K & B Mounting, Inc., Extension—Elkhart County, Ind.,* No. MC—1184 (Sub-No. 22) (Dec. 13, 1976); *Whiteford Transport, Inc., Extension—Van Conversions,* No. MC—109682 (Sub-No. 34) (Dec. 28, 1976). In all of these proceedings, the ICC rejected applications to transport various vehicles, characterized by the Commission as "motor homes," on the ground that the opponents to the applications already met such transportation needs. Morgan claims that the orders imply that its authority to transport portable shelters permits transportation of motor homes. In denying the applications, however, the ICC relied on Morgan's authority to transport motor homes in truckaway service and only mentioned in passing that the carrier also possessed authority to move portable shelters. We find unpersuasive and unsound Morgan's next argument that the ICC determination in *Arco Auto Carriers,* that authority to transport "automobiles, trucks, cabs, and chassis" does not extend to motor homes, implies that authority to transport portable shelters does so extend.

Nationwide has submitted a letter from the Bureau of Operations of the ICC, written in response to an inquiry by plaintiff, which gives an "informal opinion" as to Morgan's claim. (Letter of Joel E. Burns, Director, ICC Bureau of Operations, August 9, 1977). The letter clearly distinguishes between the categories motor home and portable shelter:

"Motor homes are 'recreational self-propelled units which have an engine and may be driven.' *Morgan Driveaway, Inc., Extension—Recreational Vehicles* . . Such vehicles have many of the attributes of a second residence on wheels. Thus they are generally equipped with plumbing, kitchen facilities, beds, power converter electrical system, city water hookups . . . The term, 'portable shelters', in my further opinion encompasses something much less than a 'home' or 'second residence' on wheels . . . Unlike motor homes, which can also be appropriately described as a permanent type home in transit, portable shelters are designed to furnish temporary shelter from the elements on brief recreational trips. Moreover, portable shelters are generally not self-propelled, but rather derive their mobility from a capacity to be mounted or slid into the beds of conventional pickup trucks."

Under these circumstances, Morgan's argument that its portable shelter authority can be construed to encompass transport of motor homes is difficult to accept.

Morgan also argues that the ICC has held campers to be "synonymous" with motor homes. (Defendant's Answer at 10) It relies for this proposition primarily on language in *American International Driveaway Extension—Hawaii,* 117 M.C.C. 63 (Aug. 3, 1972), in which the ICC granted an application to transport various vehicles because the needs of fourteen shippers in the area warranted the additional service. In deciding what type of authority to give the applicant, the Commission found that the motorized campers to be shipped were "fundamentally the same type of vehicle as a motor home" and that therefore they should be transported under that commodity description. The decision in *American International* was referred to in a later ICC decision, *Barrett Mobile Home Transport, Inc., Extension—Specified Indiana Facilities,* No. MC—116073 (Sub-No. 334) (June 8, 1977), for the proposition that motor home authority "includes" authority to transport "pickup campers". While Morgan relies on both decisions to support its argument that motor home and camper authority are the same, the language in these and other ICC orders establishes that there is at most a limited overlap between the two categories.

In *American International* itself, the ICC distinguished between motor homes and campers, emphasizing that motor homes are a "separate category of motor vehicle" while many campers "are not motor vehicles at all." 117 M.C.C. 63, 68. One year later, in *Nationwide Auto Transporters,* 118 M.C.C. 469, 475 (June 28, 1973), the ICC stated:

"we have recognized, and will continue to recognize, motor homes as a unique category of motor vehicle separate and distinct, for commodity description purposes, from all other types of motor vehicles." Even in granting Morgan's own application to transport motor homes in truckaway service and campers, the Commission differentiated between the two categories, describing motor homes as "recreational self-propelled units" and campers as "recreational type units which are designed to be mounted on the beds of conventional pickup trucks." *Morgan Drive-Away, Inc., Extension—Recreational Vehicles*, No. MC—103993 (Sub-No. 524) (Oct. 15, 1971). Similarly, in an informal opinion letter[2] to the President of Nationwide, the ICC Bureau of Operations disagreed with Morgan's interpretation of its authority, stating that while "motor homes are 'fully self-contained living units', campers and campcoaches are by definition something less." The Bureau of Operations relied on the order of the ICC in *American International* in making this distinction. (Letter of Robert S. Turkington, Assistant Director, ICC Bureau of Operations, October 6, 1977). In the wake of this history, Morgan's equation of camper and motor home authority cannot stand.

■ Morgan argues further that the court should be reluctant to assume jurisdiction of this case in the absence of a prior ICC determination that Morgan's actions constitute a clear and patent violation of the Commission's rules. While Morgan cites several cases in which a federal court has, in fact, referred cases to the ICC, none of these decisions indicates that the procedure is obligatory. See *Tri-State Motor Transit Co. v. International Transport, Inc.*, 479 F.2d 171 (8th Cir. 1973); *Baggett Transportation Co. v. Hughes Transportation, Inc.*, 393 F.2d 710 (8th Cir. 1968).[3] Nationwide cites at least one case in this circuit in which a court has determined a § 322(b)(2) claim without a prior ICC ruling. *Nationwide Auto Transporters, Inc., v. Auto Driveaway Co.*, Civ. No. 2345 (S.D. N.Y. June 27, 1974). Indeed, as plaintiff points out, the very purpose of § 322(b)(2), to provide injured parties with a speedy alternative to a lengthy agency proceeding, would be frustrated if a prior ICC determination were required in every instance.

Morgan also notes that it has filed an application with the ICC for authority to transport motor homes from the specified points in Indiana and, as part of this application, has asked the Commission to interpret the scope of its portable shelter and camper authority. It therefore asks the court to stay its proceedings and refer the matter to the ICC. While § 322(b)(3) gives the Commission the right to notify a district court that it is considering a question also before the court and to request the court to stay the judicial proceeding, in which case the court is bound to do so, the ICC has advised this court that it does not wish to exercise its right to request a stay.[4] We construe this advice as support for our view that the court does have jurisdiction of the subject matter. Accordingly, Morgan's motion to dismiss is denied.

## II.

■ We turn to Nationwide's motion for a preliminary injunction. The rule in this circuit is that a preliminary injunction may issue only upon a clear showing of either "probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and*

2. *See* note 1 *supra.*

3. In *Baggett,* the ICC notified the District Court that it was considering the same issues as those before the court, which then stayed its proceedings out of deference to the agency. The ICC has not requested a stay of this suit. *See* text *infra.*

4. Consistent with the provisions of § 322(b)(3), the court notified the ICC (Washington) that this case was pending and asked for advice as to whether the Commission wished to exercise its right to request a mandatory stay of the action. The court was later advised by Stuart B. Robbins, the Assistant Regional Counsellor of the ICC speaking on behalf of the Commission, that the Commission did not wish to exercise its right to request a stay.

a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). In determining the jurisdictional question, we necessarily decided that Nationwide has more than a probable chance of success on the merits since we found that Morgan's action amounted to a clear and patent violation of ICC rules. The degree of harm to the parties resulting from the grant or denial of relief remains for consideration.

 Despite its alternative language, the *Sonesta* formula has been interpreted to require that the party seeking the injunction establish that denial would threaten it with irreparable injury. *Triebwasser & Katz v. A. T. & T.,* 535 F.2d 1356 (2d Cir. 1976); Mulligan, *Preliminary Injunction in the Second Circuit,* 43 Bklyn.L.Rev. 831, 832 (1973). The affidavits of Nationwide's president, Allen Herman, make a strong showing not only that loss of the disputed business is of greater harm to it than to Morgan but also that Nationwide may be wiped out altogether if it does not recover the business which it claims has flowed from it to Morgan. While Nationwide's agent in Indiana reported revenue of $119,000 in May and $25,000 in July of 1977, this amount shrank to $7,200 in August, allegedly as a result of Morgan's operations. (Affidavit of Allen Herman at ¶ 15) Morgan, on the other hand, reports income of over $150,000 from transporting motor homes in the disputed areas from January through October of 1977. (Affidavit of Ralph Miller at ¶¶ 4–6) The significance of these figures is best appreciated when considered in relation to the difference in the scale of operations of the two companies. In 1976, Morgan reported revenue of $26,500,000 while Nationwide reported only $2,500,000. (Supplemental Affidavit of Allen Herman at ¶ 2, taken from *Trincs Blue Book of the Trucking Industry* (1976)) It follows that the loss of the business at issue, while representing only moderate damage to Morgan's operations, threatens Nationwide with irreparable harm. Since Nationwide

has demonstrated its probable success on the merits and denial of relief would subject it to irreparable loss, the motion for a preliminary injunction is granted.

Submit order on notice.