[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 251 
F.M. Ross petitioned this Court for a writ of mandamus directed to the Honorable George R. Green, District Judge acting as a Circuit Judge of Russell County, to review certain orders issued by that court that restrict the amount of water that can be pumped from wells operated on his property in Russell County. An appeal questioning the validity of the latest orders was also filed by Ross pursuant to Rule 4 (a)(1)(A), Alabama Rules of Appellate Procedure,[1] and that appeal was consolidated with his previously filed mandamus petition.
In April of 1982, Ross purchased some property in Russell County known as the "Tillery Estate." He purchased the property with the intention of developing a well located thereon so he could sell water commercially to Smiths Water Authority. Pursuant to this goal, Mr. Ross ran a test on the well to see how much it would produce. The test involved the pumping of a considerable amount of water from the well over an 18- or 19-day period.
During the pumping test, Mr. Ross became aware of the fact that some of the wells in the surrounding neighborhood had gone dry, and he stopped the test a few days short of the scheduled test period. After the pumping was stopped, water returned to two of the wells that had gone dry during the pumping test.
A few weeks after Ross stopped his testing of the well, Norman S. Luton, Sr., Arthur A. Harris, Bernice Bailey, and Margaret Reynolds filed a complaint in the Circuit Court of Russell County seeking a permanent injunction against Ross's alleged unreasonable withdrawal of water and seeking damages incurred as a result of his previous pumping. Each plaintiff owned and occupied property near the Ross property and obtained water for domestic and household use from wells located on his or her property. Ross filed a motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court overruled his motion, and Ross then filed his answer to the complaint.
While the case was being prepared for trial, Ross continued with his preparations to sell water commercially, and on December 22, 1982, he entered into a contract to provide water for Smiths Water Authority (hereinafter "Smiths"). Shortly after entering into the contract, Ross began withdrawing large quantities of water from his well, as he had done during the test period, and selling it to Smiths. The owners of wells in the surrounding area, including some of the plaintiffs, again experienced trouble with their wells going dry and losing the water flow or percolation.
Plaintiffs, with the trial court's approval, amended their complaint to ask for additional compensatory damages resulting from Ross's resumed pumping and for punitive damages. Plaintiffs also filed a request *Page 252 
for a temporary restraining order, which the trial court granted after plaintiffs posted a bond for $5,000. This order temporarily restrained Ross from withdrawing water from his well in excess of his domestic or household needs and set a time for a hearing to determine if the injunction should become permanent. The trial judge conducted the hearing and granted a motion for permissive joinder of Jimmy H. Hardin, Wyman T. Kelly, and E.A. Spivey as parties plaintiff. The court in an order issued on February 11, 1983, found that Ross's withdrawal of large quantities of water from his well constituted a private nuisance and enjoined Ross and his agents "from removing water from his wells in any amount in excess of that amount which is actually required for [his] household or domestic use."
Ross filed a motion for new trial or, in the alternative, judgment notwithstanding the verdict and a motion to suspend the injunction pending appeal; both were denied. No appeal was taken from the order of February 11, 1983. On April 12, 1983, the parties, in an attempt to end the litigation and to allow Ross to be able to sell some water from his well, filed with the court a stipulation and agreement dated March 11, 1983. The stipulation was signed by all the parties and provided to the effect that: defendant admitted that he was maintaining a private nuisance by withdrawing an amount of water from his wells which substantially depleted the water in plaintiffs' wells; defendant would be allowed to pump a reasonable amount of water from his wells so long as he exercised due diligence to insure that the water table was not again depleted to the extent that plaintiffs' wells would be adversely affected by the loss of the flow of water therein; the permanent injunction entered by the court on February 11, 1983, would remain in full force and effect, except that plaintiffs agreed not to bring any action for contempt so long as defendant used due diligence and caution in withdrawing water from his wells so as to insure that the water table remained stable and sufficient in quantity to supply water to plaintiffs' wells; defendant would inspect the water level in an observation well in a manner provided for in the agreement and keep a written record of the measurements, which would be sworn to by the person making the measurements; plaintiffs would have the right to come onto defendant's property and inspect the observation well and make their own measurements of the water table; defendant agreed to voluntarily cease all pumping activities if the water table as determined by the method provided in the agreement dropped to 280 feet; plaintiffs would notify Ross within a reasonable time if they experienced problems getting sufficient water for their household and domestic use; Ross would pay plaintiffs' damages and attorney's fee as set out in the agreement; plaintiffs would release and discharge Ross from all damages to which they might be entitled as of the date of the agreement, but would retain the right to recover for future wrongs; and Susie Wells was added as a party plaintiff and would recover such damages as were provided for in the agreement. The court on April 12, 1983, adopted the agreement of the parties as part of its order.
After the stipulation and agreement were entered into by the parties and approved by the court, personnel of Smiths Water Authority resumed operation of the Ross well, as provided for in the agreement. A short time after the operation was resumed, Ross was notified that some of the surrounding landowners were again having problems with the water level in their wells. Ross tried to help those landowners to obtain water, but he did not stop the operation of his well.
Plaintiffs filed a petition for rule nisi against Ross to enforce the injunction granted on February 11, 1983. Ross answered the petition by alleging that: the proceeding should be transferred to another county or an outside circuit judge should be appointed to the case; the petition should be dismissed because there were no matters contained in the petition which could be the subject matter of a rule nisi proceeding; plaintiffs had failed to satisfy *Page 253 
the terms of the agreement by failing to notify him within a reasonable time if they experienced any problems getting sufficient water for their household and domestic uses and by failing to prove the necessity and the causal relationship for the costs of deepening some of their wells; he had abided by the agreement and had the right to continue pumping as long as the water table in the observation well was not dropped below 280 feet; plaintiffs had failed to mitigate their damages; and the water system was a necessary and "mandatory" party and should be joined. Ross also counterclaimed for damages resulting from plaintiffs' failure to abide by the agreement and from an alleged conspiracy to interfere with his property right to sell water under the contract with Smiths.
Ross next filed a motion to join Smiths and the City of Phenix City as additional defendants, claiming that both were necessary parties to the proceedings. Judge Paul J. Miller, who had presided over this case from the date of its original filing, issued an order recusing himself from the case and appointing the Honorable George Green, District Court Judge for Russell County, to serve as acting circuit judge over all further matters in this case. After a hearing on the petition and motions, Judge Green issued an order on September 8, 1983, which read in part:
 "2. After the Stipulation and Agreement dated March 11, 1983, Defendant resumed the pumping of water from his wells and depleted the water table to the extent that water could not be obtained from the wells of Plaintiffs E.A. Spivey, Wymon T. Kelly, Margaret Reynolds and Susie Wells.
 "3. The above affected Plaintiffs, as well as other nearby persons, notified the Defendant within a reasonable time they were again experiencing problems getting sufficient water for their household and domestic use.
 "4. Defendant continued to pump water from his well after due notification by the Plaintiffs of the depletion of water from their wells.
 "5. Defendant made the required water table measurements, but failed to have them sworn or attested to as stipulated.
 "6. Defendant did not pump water so that the water table dropped below 280 feet in his observation well.
 "7. Defendant subsequent to the Stipulation and Agreement of March 11, 1983, lowered the water pump in his producing well to the depth of 323 feet.
 "8. At times during the pumping of water from Defendant's well, Defendant has pumped more than the 200 gallons per minute allowed by the Alabama Department of Public Health.
 "9. The Defendant's withdrawal of water in large quantities from his wells diminished the flow of water into Plaintiffs' wells and Plaintiffs are likely to suffer irreparable injury if Defendant continues his present use of water.
 "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
 "1. The Defendant, and all persons acting through or under his behalf are prohibited from removing water from wells upon Defendant's property in an amount in excess of 150 gallons per minute.
 "2. Defendant is to raise the pump in the producing well back to the March level of 280 feet, and is to do so immediately.
 "3. Defendant's Counterclaim against Plaintiffs is hereby dismissed.
 "4. Hearing and further orders, as to Plaintiffs' damages and as to the necessity of reinstatement of the permanent injunction upon compliance with the Court's above stated Order, is set for Thursday, October 20, 1983, at 11:00 A.M.
 "5. In the event that the Defendant chooses not to comply with Items 1 and 2 of this Order, then the Defendant and all persons acting through or at his direction are RESTRAINED AND ENJOINED from removing water from the well upon Defendant's property in any amount in *Page 254 
excess of that amount of water actually required for the Defendant's household or domestic use."
A short time after the entry of that September 8 order, plaintiffs filed a second petition for rule nisi seeking enforcement of the injunction. Ross filed a petition in this Court for writ of mandamus and a motion in the trial court to strike or quash the petition for rule nisi. The trial judge held another hearing and issued an order on September 30, 1983, affirming and continuing its order of September 8. Ross filed a notice of appeal from the orders of September 8 and September 30 and was granted a stay of these orders pending appeal.
 I.
A writ of mandamus "is an extraordinary remedy which should only be granted when there is a clear showing that the trial court abused its discretion and exercised it in an arbitrary or capricious manner." Ex parte Hartford Insurance Co.,394 So.2d 933, 936 (Ala. 1981). A petitioner is entitled to a writ of mandamus if there is a showing of a clear legal right to the order sought, an imperative duty upon the respondent to perform, accompanied by a refusal to do so, a lack of another adequate remedy, and a proper invocation of the jurisdiction of the court. Martin v. Loeb Company, Inc., 349 So.2d 9, 10
(Ala. 1977). Mandamus is not a substitute for appeal. State v.Cannon, 369 So.2d 32, 33 (Ala. 1979). Ross raises the following issues, which are proper for review in a petition for writ of mandamus:
A. Whether the trial judge should have recused himself and asked the chief justice, pursuant to § 6.10 of amendment 328 of the Alabama Constitution of 1901, to appoint a judge from outside the circuit to hear the case.
B. Whether the trial judge abused his discretion by denying Ross's motion for change of venue.
C. Whether the trial judge abused his discretion by refusing to join Smiths and/or the City of Phenix City, d/b/a Phenix City Utilities System (hereinafter "Phenix City"), as indispensable parties under Rule 19, Alabama Rules of Civil Procedure.
 A.
Canon 3 (C), Alabama Canons of Judicial Ethics, provides in part:
"C. Disqualification:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;"
A judge should not act "if he has any interest, the probable and natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit." Morgan CountyCommission v. Powell, 292 Ala. 300, 311, 293 So.2d 830, 839
(1974). The Court in Duncan v. Sherrill, 341 So.2d 946, 947
(Ala. 1977), quoted 48 C.J.S. Judges § 82 (b) as stating the general rule on disqualification for prejudice. That § 82 (b) provided:
 "It is actual existence of prejudice on the part of a judge, not the mere apprehension of it by a party which disqualifies. Further, the disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity. . . ."
A mere accusation of bias unsupported by substantial fact does not require disqualification of a judge. Taylor v. Taylor,387 So.2d 849, 852 (Ala.Civ.App. 1980).
Ross did not seek the disqualification of the judges in Russell County until after the parties had entered into the stipulation and agreement and plaintiffs had filed their first petition for rule nisi. Ross, in his answer to that petition, sought appointment *Page 255 
of an outside judge, but made only general accusations of bias and prejudice. Judge Miller, who had presided over this case from the date of its original filing, then recused himself and pursuant to Rule 13, Alabama Rules of Judicial Administration, appointed Judge Green, District Court Judge for Russell County, to serve as acting circuit judge over all further matters in this case. The recusal order does not provide the reasons for Judge Miller's recusal or for Judge Green's appointment. The appointment of Judge Green as acting circuit judge is authorized by Rule 13, Alabama Rules of Judicial Administration, and the general accusations of bias and prejudice made by Ross are not sufficient to require the disqualification of Judge Green. "Prejudice on the part of a judge should not be presumed." Duncan v. Sherrill, 341 So.2d at 947. Judge Green did not abuse his discretion in refusing to disqualify himself.
Ross also questions the validity of the orders entered by Judge Miller prior to his recusal in this case. Ross failed to object and to specify the reasons demanding Judge Miller's disqualification prior to the entry of these orders. The disqualification of a trial judge for interest or prejudice may be waived if the parties proceed to trial without objection.MacMahon v. Baumhauer, 234 Ala. 482, 175 So. 299 (1937); Exparte Clanahan, 261 Ala. 87, 72 So.2d 833 (1954). Ross waived his objection to these orders by failing to object prior to the original hearings in this case conducted by Judge Miller.
 B.
Ross, in his answer to plaintiffs' first petition for rule nisi, asked for a change of venue, alleging that he could not obtain a fair and impartial hearing in Russell County because of local prejudice. Code 1975, § 6-3-20, provides:
 "Either party to a civil action may move the court to change the venue at any time before final trial, making affidavit that for causes set forth, he cannot have a fair and impartial trial in the county where the action is pending. The court may direct a change to the nearest county free from proper objection by either party, to be determined by affidavits and, whenever it will best secure the ends of justice, it may require the applicant to give bond and security for costs. The same party can have the venue changed but once."
"[L]ocal prejudice which tends to prevent a fair and impartial trial is ground for change of venue." Braswell v. Money,344 So.2d 767, 769 (Ala. 1977). The Court in Braswell went on to state:
 "Generally speaking, the prejudice must exist throughout the county, and not in the particular locality, but if prejudice in a particular locality exists and the number of jurors from that locality is so [dis]proportionately large that an impartial jury cannot be selected, a change of venue may be granted. That the people of the community are generally interested in the question involved is not sufficient, but it has been held that venue may be changed if the residents of the community are interested in the event, to such an extent as to prevent a fair trial."
344 So.2d at 769 (quoting 92 C.J.S. Venue § 143, p. 853 (1955)).
The question, then, is whether Ross presented evidence of local prejudice of such character as to create a reasonable belief that a fair and impartial trial could not be obtained in Russell County. Braswell, 344 So.2d at 769. Allegations that the outcome of this case may have an effect on the competition between two local utility systems and that one judge, who later recused himself, had been associated with one of these companies in the past are not sufficient to prove local prejudice. Ross presented no evidence that "the trial of this case has created widespread interest and comment in the community, nor that opinions have been formed concerning the case." Braswell, 344 So.2d at 769. The accusations made by Ross are not sufficient to create a reasonable belief that a fair and impartial trial could not be obtained in Russell County. The trial court *Page 256 
did not abuse its discretion by refusing to change venue to another county.
 C.
Ross argues that the trial judge abused his discretion by refusing to act on his motion to join Smiths and/or Phenix City as indispensable parties under Ala.R.Civ.P. 19. Rule 19 provides in part:
 "(a) Persons to be joined if feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
 "(b) Determination by court whenever joinder not feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."
The provisions of Rule 19 provide a two-step process. Note,Rule 19 in Alabama, 33 Ala.L.Rev. 439, 446 (1982). "First, a court must determine whether the absentee is a person who should be joined if feasible under Rule 19 (a)." Note, supra.
If the court determines that the absentee is a person who should be joined under Rule 19 (a), "[r]ule 19 (b) sets forth four factors to consider in determining whether an action should proceed in the absence of such a person." Mead Corp. v.City of Birmingham, 350 So.2d 419, 421 (Ala. 1977); Note,supra.
Ross alleges that Smiths and Phenix City have interests relating to the subject of the action and are so situated that the disposition of the action in their absence may as a practical matter impair or impede their ability to protect their interests. "The `interest relating to the subject matter of the action' that makes an absent person a party needed for just adjudication must be a legally protected interest, not merely a financial interest or interest of convenience." 3A J. Moore J. Lucas, Moore's Federal Practice § 19.07-1[2] at 19-129 (2d ed. 1982); Realty Growth Investors v. Commercial Industrial Bank of Memphis, Tennessee, 370 So.2d 297, 304
(Ala.Civ.App.), cert. denied, 370 So.2d 306 (Ala. 1979).
Phenix City, as the operator of a competing utility system, has merely a financial interest relating to the subject matter of this case and is not a party that should have been joined under Rule 19 (a). Smiths, by entering into a contract to purchase water from Ross, has a legally protected interest relating to the subject matter of this case and is so situated that the disposition of this case in its absence may as a practical matter impair or impede its ability to protect that interest. Smiths is a party that should have been joined if feasible under Rule 19 (a), so we must proceed with the analysis required by Rule 19 and determine *Page 257 
whether Smiths is an indispensable party under Rule 19 (b).
The determination of whether a party is indispensable under Rule 19 (b) is based on equitable and pragmatic considerations,Toney v. White 476 F.2d 203, 207 (5th Cir. 1973),[2] and includes the examination of the following factors provided in the rule:
 "first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."
Mead Corp., 350 So.2d at 421-22.
After a careful consideration of these factors and the equities involved, we find that Smiths is not an indispensable party to this action. "[E]ven a party whose interest may be affected by a court action may not be indispensable if its interest is adequately represented by a party already before the court." H.H. Robertson Co. v. Lumbermen's Mutual CasualtyCo., 94 F.R.D. 578, 580 (W.D.Pa. 1982). Ross and Smiths, as a result of the contract between them, share the same interests, and there is no reason to believe that either the parties to this case or Smiths would be prejudiced if the action proceeded with the present array. Nationwide Auto Transporters, Inc. v.Morgan Driveaway, Inc., 441 F. Supp. 755, 757 (S.D.N.Y. 1977). The interests of Smiths are adequately represented by Ross, and if Smiths feared otherwise, it could easily intervene. H.H.Robertson Co., 94 F.R.D. at 580. There is no reason why the trial court can not give meaningful relief to the parties in the absence of Smiths. Nationwide Auto Transporters, Inc.,441 F. Supp. at 757. As shown by this discussion, the trial judge did not abuse his discretion in failing to join Smiths and/or Phenix City as indispensable parties.
Ross has failed to show either a clear right to relief or an abuse of discretion on the part of the trial court. The writ of mandamus is denied.
 II.
Ross also appeals from the trial court's orders of September 8 and September 30 and raises the following issues concerning those orders:
A. Whether the injunction issued in the September 8 order is null and void due to the failure of the trial court to require the posting of a bond or the giving of other security.
B. Whether, in a rule nisi proceeding brought over four months after the rendition of a final decree, a trial court has the authority to modify or amend its prior order.
C. Whether the trial court's findings of fact contained in its order of September 8 are clearly erroneous, arbitrary, and against the great preponderance of the evidence.
 A.
Ross argues that the injunction issued in the September 8th order is null and void due to the failure of the trial court to condition the order upon the posting of a bond or the giving of security by plaintiffs, as required by Ala.R.Civ.P. 65 (c). Rule 65 (c) provides:
 "(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorneys fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, *Page 258 
however, no such security shall be required of the state of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases."
"The requirement of security is intended to protect the party restrained or enjoined, as the case may be, against `cost and damages' incurred or suffered by the party wrongfully restrained or enjoined." 7 J. Moore, J. Lucas K. Sinclair, Jr., Moore's Federal Practice § 65.09 at 65-94 (2d ed. 1982). "A bond is not required of the prevailing party as a condition to the entry of an order granting a permanent injunction." 2 C. Lyons, Jr., Alabama Practice § 65.5 at 215 (Supp. 1984) (citingDobbins v. Getz Exterminators of Alabama, Inc., 382 So.2d 1135
(Ala.Civ.App. 1980).
The trial court heard extensive testimony from both sides before it issued its order of September 8, and that order can only be construed as a modification of the permanent injunction entered on April 12 incorporating the stipulation and agreement of the parties. No bond is required for the entry of an order granting a permanent injunction, and the injunction of September 8 is not void for lack of security or bond.
 B.
Ross questions the authority of a trial court in a rule nisi proceeding held four months after the entry of final order to modify or to amend that order. This Court in Wilkinson v. Stateex rel. Morgan, 396 So.2d 86, 88 (Ala. 1981), stated:
 "However, unlike the `proceedings past and closed' referred to in Saad [51 Ala. App. 668, 288 So.2d 731
(1974)], the injunction is a continuing order over which a court, sitting in equity, maintains jurisdiction for the life of the decree. This Court recognized this peculiar nature of the injunction decree in Ex parte Myers, 246 Ala. 460, 21 So.2d 113
(1945). There, this Court quoted, with approval, the California case, Sontag Chain Stores Co. v. Superior Court, 18 Cal.2d 92, 113 P.2d 689, 690 (1941), stating:
 `[T]he decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree, it has uniformly been held, is always subject, upon proper showing, to modification or dissolution by the court which rendered it. The court's power in this respect is an inherent one.'
 246 Ala. at 463, 21 So.2d 113. Thus, the life of the injunction, by its very nature, is subject to pertinent events that occur subsequent to the decree. In the words of the Myers Court, `The injunction relates to matters of future continuous operation.' 246 Ala. at 464, 21 So.2d 113."
It is not questioned that a court has power to modify or to dissolve an injunction upon a proper showing of changed circumstances, and some cases have allowed this power even without a showing of changed conditions. Ex parte Myers,246 Ala. at 463, 21 So.2d at 115.
Plaintiffs, at the hearing held on their petition for rule nisi, presented sufficient evidence to show that Ross had not completely abided by the court's order adopting the stipulation and agreement of the parties and that he had again lowered the water table to the extent that plaintiffs' wells were adversely affected. Under these circumstances, the trial court clearly had the authority to modify its earlier decree in order to protect plaintiffs' water rights.
 C.
Ross challenges the trial court's findings of fact contained in its order of September 8 as clearly erroneous and against the great preponderance of the evidence. The majority of the evidence presented at the hearing was ore tenus testimony, and generally, when a trial court has heard ore tenus testimony, "every presumption will be indulged in favor *Page 259 
of the trial court, and its findings will not be disturbed on appeal unless palpably wrong or clearly erroneous." Morrow v.Wood, 411 So.2d 120, 122 (Ala. 1982).
We have reviewed the record and find that the testimony at the hearing supports the trial court's findings and decision in its order of September 8. Based on the reasoning in this part of the opinion, the trial court orders of September 8 and September 30 are affirmed.
82-1282, WRIT DENIED.
83-101, AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.
[1] Rule 4 (a)(1)(A) provides for an appeal within 14 days of the date of the entry of any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or modify an injunction.
[2] Because of the similarity between the rules, "[c]ases interpreting the Federal Rules of Civil Procedure are authority in the construction of the Alabama Rules of Civil Procedure."Bracy v. Sippial Electric Co., Inc., 379 So.2d 582, 584 (Ala. 1980).