BRADLEY, Judge.
This case involves a petition for a writ of mandamus to require the Honorable Byron N. Waldrop to recuse himself from presiding over a juvenile case and also to require him to vacate an order prohibiting discovery in that same case.
In September 1981 Patricia Hopper, the natural mother of Tiffany Amanda Whiting Poole, asked Richard and Nelda Rives if they would come out to Texas and get her children because she was unable to care for them. The Riveses, residents of Alabama, immediately did so, and began caring for Mrs. Hopper’s daughter Amanda. At that time Amanda was approximately six and one-half years of age.
On April 24, 1985 the Department of Pensions and Security (DPS) took Amanda into custody and filed a petition in the Juvenile Court of Marshall County. The petition was presented to Judge Waldrop, and a guardian ad litem was appointed for Amanda. The guardian ad litem was a parttime employee of the district attorney’s office of that county.
The following day, April 25, 1985, a seventy-two hour hearing, which was recorded, was held in Judge Waldrop’s office. Seventy-two hour hearings are required pursuant to section 12-15-60(a), Code 1975, whenever a child is taken into custody and continuation of detention is desired. At the hearing a DPS representative reviewed the allegations and charges of sexual misconduct made by Amanda against Mr. Rives. Thereafter, Judge Waldrop asked Mr. Rives if he had anything to say and advised Mr. Rives that he was under no obligation to testify, but that, if he did, any statements made could be used against him. Mr. Rives said that he wanted to make a statement.
Before Mr. Rives could say anything, Amanda’s guardian ad litem asked Judge *516 Waldrop if he could speak with him in private. Judge Waldrop and the guardian ad litem then left the office. In about a minute they returned, and Judge Waldrop told the Riveses that the guardian ad litem had asked that Mr. Rives be given the Miranda warnings.
Judge Waldrop then read the warnings to Mr. Rives. Thereafter, Mr. Rives testified and made some incriminating statements.
Following Mr. Rives’ testimony, Judge Waldrop found that the release of custody of Amanda to the Riveses would not be in her best interests, and ordered that she be placed in the temporary custody and care of DPS. A hearing to determine who should have permanent custody of Amanda was to be held at a later date. After the close of the seventy-two hour hearing, Mr. Rives was arrested and charged with sodomizing Amanda.
On October 28, 1985 Mr. Rives was tried on a charge of sodomy in the first degree. That case ended in a mistrial because the jury could not agree on a verdict.
During the sodomy trial Judge Waldrop was called as a prosecution witness. He testified from his recollection and his notes as to Mr. Rives’ statements at the April hearing. Later, Mr. Rives took the stand and testified that Judge Waldrop’s version of his testimony was incorrect.
Thereafter, the tape recording of the April hearing was produced and the disputed portion was played. After listening to the tape, Judge Waldrop continued to maintain his position regarding the statements. He also stated that two qualified court reporters had differed on the exact wording of the testimony in question.
In October 1985 Mrs. Hopper, Amanda’s natural mother, filed a discovery motion in Judge Waldrop’s court. During this time Judge Waldrop was attending the Judicial College, and another judge was assuming his responsibilities. This motion was not ruled on by the substitute judge, but was set on the regular docket to be heard upon Judge Waldrop’s return.
In November 1985, after the conclusion of the sodomy trial, the Riveses gave notice to DPS and to Mrs. Hopper of their intent to obtain information by deposition discovery. In response to this notice, DPS filed a motion for a protective order, which was granted. No hearing was held regarding this order, and the Riveses contend that the order violates their discovery rights under the law.
Subsequently, the Riveses and Mrs. Hopper joined together and filed a motion requesting that Judge Waldrop recuse himself from presiding over the proceedings regarding the permanent custody of Amanda, which were still pending. This motion was denied. The Riveses and Mrs. Hopper then filed a petition in this court seeking a writ of mandamus directing Judge Waldrop to recuse himself, and also to require him to vacate the protective order granted to DPS in November 1985.
In support of the plea for a writ of mandamus, Mr. Rives asserts that the statements made by him at the April hearing will be offered at the custody proceeding and that this testimony will play a very important role in the ultimate decision as to the custody of Amanda. He also charges that Judge Waldrop’s participation in the sodomy trial constitutes sufficient evidence of bias and prejudice to require his disqualification in the custody matter.
The Riveses and Mrs. Hopper also contend that Judge Waldrop displayed his biased attitude towards them by participating in the discussion with Amanda’s guardian ad litem at the April hearing outside of the Riveses’ presence. Mrs. Hopper also argues that Judge Waldrop’s partiality and desire to control the case is evidenced by the fact that during his absence in October 1985 no action was taken on her discovery motion. She argues that her motion was not timely entertained because Judge Wal-drop had left specific instructions with his office that no action was to be taken in the case. Judge Waldrop states, however, that he left no such instructions.
“A writ of mandamus ‘... should only be granted when there is a clear showing that the trial court abused its discretion and *517 exercised it in an arbitrary or capricious manner.’ ” Ross v. Luton, 456 So.2d 249 (Ala.1984) (citation omitted).
The Riveses and Mrs. Hopper argue that Judge Waldrop abused his discretion by refusing to recuse himself from the trial of a juvenile matter. They contend that recu-sal was required by Canon 3 of the Canons of Judicial Ethics.
Canon 3 of the Alabama Canons of Judicial Ethics provides that a judge should perform the duties of his office impartially and without bias or prejudice. When a judge is unable to obey those commands, recusal is required. See, Alabama Canons of Judicial Ethics Canon 3 C(l) (1975).
In Alabama a judge is presumed to be qualified and unbiased, with the burden on the moving party to prove to the contrary. Wells v. Wells, 346 So.2d 442 (Ala.Civ.App.), cert. denied, 346 So.2d 444 (Ala.1977). Furthermore, the degree of prejudice necessary for disqualifying a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case. It must be of a character, personal in nature, calculated to seriously impair his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity. Ross v. Luton, supra. Thus, it can be said that recusal is required under Canon 3 C(l) when facts are such that a person of ordinary prudence in the judge’s position, knowing all of the facts known to the judge, would find that there is a reasonable basis for questioning the judge’s impartiality, and there is proof of supporting facts. In the Matter of Sheffield, 465 So.2d 350 (Ala.1984).
At Mr. Rives’ sodomy trial, Judge Waldrop was asked questions about Mr. Rives’ statements at the juvenile hearing. The judge merely related what he remembered Mr. Rives saying at that hearing. We find no bias here.
Judge Waldrop did step outside his office to speak with the guardian ad litem, but he immediately returned to his office and informed the Riveses that he had been requested to give Mr. Rives the Miranda warnings before Mr. Rives made any incriminating statements. We find no bias or prejudice exhibited in this act of the judge.
We also find no fault with Judge Waldrop’s decision to consider Mrs. Hopper’s motion for discovery after he returned from the Judicial College. Although Judge Waldrop denied leaving instructions that a substitute judge was not to handle any matters relating to the custody of Amanda, even if he did retain the right to rule on future matters in this case, we find no bias or prejudice exhibited by his desire to do his job. Most importantly, the evidence does not reveal any other motive.
After carefully reviewing the facts in the light of the attendant standards, we cannot say that Judge Waldrop abused his discretion by refusing to recuse himself in this case.
The final contention of the Riveses and Mrs. Hopper is that Judge Waldrop should be compelled to vacate the November 1985 protective order against certain discovery. To support this contention they argue that Judge Waldrop, sitting as a juvenile judge, wrongly applied Rule 26(dc), Alabama Rules of Civil Procedure. Judge Waldrop is regularly a district court judge.
Rule 26(dc), Alabama Rules of Civil Procedure, provides in essence that, unless the parties agree otherwise, no depositions, oral or written, shall be allowed in district court proceedings unless the witness will not be available to testify at trial. Prior to November 15, 1985, A.R.Civ.P. 26(dc) also applied to juvenile cases pending in district court.
On November 15, 1985 the Alabama Supreme Court entered an order amending rule 1 of the Rules of Juvenile Procedure. The amendment provides, in pertinent part, that the procedures used in juvenile cases will now be uniform irrespective of the court in which the action is pending. Thus, discovery procedures in juvenile court are now to be consistent in all courts.
Notice was given on November 11, 1985 that the Riveses’ attorney would take the *518 deposition of an employee of DPS on November 18, 1985. On November 15, 1985 DPS sought a protective order to disallow the discovery. On November 25, 1985 the juvenile judge granted the order.
It appears that the protective order sought by DPS was granted based upon the prohibition of discovery under A.R. Civ.P. 26(dc). Under the new rules, however, discovery is permitted in juvenile cases pending in district court. In this case both the motion for the order and the order itself were perfected after the amended rules had become effective. Thus, absent any other valid reason for the protective order, we must grant that portion of the petition requesting vacation of the protective order.
WRIT DENIED IN PART AND GRANTED IN PART.
WRIGHT, P.J., concurs.
HOLMES, J., concurs specially.