This case results from the dissolution of a partnership of physicians, the Medical Arts Clinic (Partnership). B.S. Henry, M.D., a retired member of the Partnership, filed a "Bill for Temporary Restraining Order." A.A. Windham, M.D., and Wayne P. Hyatt, M.D.P.A., separately and as members of the Partnership, filed a "Complaint and Petition for Accounting upon Dissolution of Partnership." These cases were consolidated and tried before the trial court without a jury. On November 1, 1984, the trial court entered a decree finding certain facts and awarding relief to the various parties. On November 19, 1984, the court modified the November 1, 1984, decree to award James E. Cunningham, M.D., an additional $4,000. On November 28, 1984, the trial court further modified that decree to *Page 387 
award a lump sum payment of the accounts receivable and 12 percent interest to Dr. Henry.
Three issues are presented for review.
The first issue is particularly malodorous to this Court, for it alleges judicial and advocatorial misconduct:
 "The trial court erred in refusing to recuse himself and to grant a new trial when it was disclosed that lawyers for Drs. Cunningham and Henry had ex parte communications with the court resulting in orders adverse to appellant's [sic] interest."
At a hearing on the motion of Dr. Windham, Dr. Hyatt, and the Partnership for a new trial or, in the alternative, to alter and amend the judgment pursuant to Rule 59, A.R.Civ.P., the attorney for Dr. Cunningham testified that shortly after the November 1, 1984, decree was entered, he had an ex parte in-chambers conversation with the trial judge regarding the terminology used in the order. As a result of this conversation, the trial judge reviewed and modified the November 1 decree so as to award Dr. Cunningham an additional $4,000.
At the same hearing, the attorney for Dr. Henry testified that he called the trial judge after reading the November 1 order and "told him that I thought the decree was not complete, that it didn't impose a liability on those two partners, and there was no statement for the computation of interest and I would like to submit a suggested order." The suggested order was drafted by the attorney for Dr. Henry, submitted to the court, and entered without counsel for the Partnership ever being aware of this communication.
We are referred to Canon 3 (C), Alabama Canons of Judicial Ethics:
"(C) Disqualification:
 "(1). A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned. . . ."
This Court in Ross v. Luton, 456 So.2d 249, 254 (Ala. 1984), and in Duncan v. Sherrill, 341 So.2d 946, 947 (Ala. 1977), quoted 48 C.J.S. Judges § 82 (b) as stating the general rule on disqualification for prejudice. That § 82 (b) provided:
 "It is actual existence of prejudice on the part of a judge, not the mere apprehension of it by a party which disqualifies. Further, the disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity. . . ."
A mere accusation of bias unsupported by substantial fact does not require disqualification. Ross v. Luton, supra.
Bias and prejudice must be shown by the conduct of the trial judge and may not be presumed or inferred by his subjective views. Hartman v. Board of Trustees of the Univ. of Ala.,436 So.2d 837 (Ala. 1983).
The trial judge testified that following his discussion with Dr. Cunningham's attorney, he looked at the trial notes and realized that Dr. Cunningham had not been compensated for the eight months that he served as managing partner and, therefore, modified the decree to award Dr. Cunningham $500 per month for the eight months, which was the amount shown by the testimony to be the additional compensation for the managing partner.
The trial judge talked with the attorney for Dr. Henry, who told him that the decree was not complete and that he would like to submit a suggested order, which the judge considered and adopted.
This evidence is not sufficient to show bias or prejudice so as to disqualify the trial judge.
In United States v. Grinnell Corp., 384 U.S. 563,86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), the United States Supreme Court stated:
 "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on *Page 388 
the merits on some basis other than what the judge learned from his participation in the case."
For aught that appears, the action of the trial judge in modifying the decree on the two occasions complained of resulted from evidence presented at the trial and from what he learned from his participation in the case and not from an extrajudicial source.
This Court does not approve of the manner in which the omissions or errors in the original decree were brought to the trial court's attention. This Court cautions both bench and bar about ex parte communications involving pending litigation with the judge by attorneys for fewer than all the litigants. If an attorney for one of the litigants contends that a decree or order entered by the trial court is incomplete or incorrect, he or she should discuss it with the trial judge only in the presence of attorneys for all the litigants, or he or she should contact the trial judge in writing, setting out his or her contentions, with copies being forwarded to attorneys for all litigants.
There was no error in the trial judge's refusing to recuse himself and grant a new trial as a result of the ex parte communication.
The second issue presented for review is that the trial court erred in awarding Dr. Cunningham 100 percent of his accounts receivable where the partnership agreement expressly provided that he would receive only 50 percent of his accounts receivable. Dr. Cunningham's accounts receivable amounted to $12,885; this was uncontested.
Section 16 of the partnership agreement provides that "any Partner . . . who withdraws for any reasons other than attaining the status of a Retired Partner . . . or who breaches or violates the terms and provisions of this Agreement will forfeit fifty (50%) percent of the amounts otherwise due him."
The trial court found:
 "While the evidence indicates numerous violations of various provisions of the Partnership Agreement by the parties to this proceeding, the plaintiffs have failed to prove any actual damage or injury resulting from such alleged breaches of the agreement. The Court finds that all alleged breaches by the defendants Dr. Henry or Dr. Cunningham were technical in nature and resulted in no actual damage to the Partnership. . . ."
The trial court heard ore tenus testimony. After considering all of the evidence, and all reasonable inferences to be drawn therefrom, we cannot find that the trial court's determination that the alleged breaches of the partnership agreement by Dr. Cunningham were technical in nature and resulted in no actual damage to the Partnership are plainly and palpably wrong.Thompson v. Hartford Accident Indemnity Co., 460 So.2d 1264
(Ala. 1984). Therefore, Dr. Cunningham should not forfeit 50 percent of the $12,885 accounts receivable as a result of his alleged breaches or violations of the terms and provisions of the partnership agreement, namely, failing to keep regular office hours, failing to take night and weekend calls, and taking more than two weeks' vacation in 1983.
A letter written by Dr. Cunningham, and received by the partners on September 29, 1983, stated: "This is to inform you of my resignation from the partnership effective October 1, 1983."
On October 3, 1983, Dr. Cunningham withdrew his resignation in writing. The partnership agreement, by its express provisions, terminated on December 31, 1983. The Partnership's office lease was terminated on November 10, 1983, although Dr. Cunningham and the other partners remained in the building until after December 31, 1983. Dr. Cunningham paid none of the Partnership expenses during the last three months, and his charges for medical services were not accounts receivable of the Partnership, nor did he receive any income from the partnership. The trial court awarded the Partnership *Page 389 
$17,523.85 from Dr. Cunningham for overhead expenses from October 1 to December 31, 1983. During this three-month period, the Partnership was in the process of being terminated. By requiring Dr. Cunningham to pay a pro rata share of the Partnership's expenses for the period from October 1, 1983, through December 31, 1983, the Court indicates that it found that Dr. Cunningham had not withdrawn from the Partnership prior to the termination of the Partnership on December 31, 1983. We cannot hold that such a finding is plainly and palpably wrong. Thompson v. HartfordAccident Indemnity Co., supra.
The Partnership, Dr. Windham, and Dr. Hyatt next contend that the court erred in excluding evidence of expenses accrued by the Partnership during the period of October 1 through December 31, 1983, but not paid until after January 1, 1984. There is no merit to this contention. The Partnership was operated on a cash basis. Actual expenses paid during that period were stipulated. The exhibit which the Partnership attempted to introduce was not prepared in the regular course of business by the certified public accountant for the Partnership, and it contained items other than accrued overhead expenses for this period.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.