6 So.3d 1165 (2008)
James Joel CURVIN
v.
Vickie Lynn CURVIN.
2061020.
Court of Civil Appeals of Alabama.
February 15, 2008.
Certiorari Denied October 24, 2008 Alabama Supreme Court 1070738.
*1167 Melvin Hasting, Cullman, for appellant.
S. Wayne Fuller, Cullman, for appellee.
THOMPSON, Presiding Judge.
James Joel Curvin ("the father") and Vickie Lynn Curvin ("the mother") were married on January 31, 2000. The parties have three children. On November 8, 2004, the mother filed a complaint seeking, among other things, a divorce and custody of the parties' children. On that same date, the mother filed a motion for immediate temporary custody of the children and exclusive use of the marital home. The trial court awarded the mother pendente lite custody of the children and set the matter for a hearing. On November 9, 2004, the father answered and filed a counterclaim for a divorce in which he requested custody of the parties' children and an equitable division of the parties' marital property.
On December 22, 2004, the trial court entered a judgment in which it divorced the parties, awarded custody of the children to the mother, and fashioned a property division. The father subsequently filed a motion to vacate the trial court's December 22, 2004, judgment. On March 22, 2005, the trial court granted the father's motion to vacate, set aside its December 22, 2004, judgment, ordered that custody of the children remain with the mother pending a final hearing, awarded the mother exclusive use and possession of the marital home, and ordered the father to pay child support pursuant to the Rule 32, Ala. R. Jud. Admin., child-support guidelines.
On March 31, 2005, the mother filed a motion for an immediate order in which she requested, among other things, that the trial court specify the amount of child *1168 support the father should pay pursuant to the child-support guidelines and order the father to make the mortgage payments on the marital home. On June 8, 2005, the trial court entered a temporary order requiring the father to pay $930 per month in child support. The trial court amended that order on June 16, 2005, to also require the father to make the mortgage payments on the marital home pending the resolution of the divorce action.
On May 31, 2006, the father filed a motion asking the trial judge to recuse himself from the case. In his motion, the father alleged, among other things, that Judge Don L. Hardeman, the trial judge assigned to the case, should be disqualified because he had received a campaign contribution in the amount of $2,000 from the law firm representing the mother. The trial court denied the motion to recuse. On June 6, 2006, the father filed a petition for a writ of mandamus in this court challenging the trial court's denial of the motion to recuse. This court denied the father's petition for a writ of mandamus.
On July 21, 2006, the mother filed a motion requesting that the trial court enter an order restraining the father from removing or attempting to remove any money from his retirement account until the trial court entered its final judgment in the case. The trial court granted the mother's motion and entered an order restraining the father from "removing, transferring, or disposing of the retirement account monies pending trial."
Following an ore tenus hearing, the trial court entered a judgment on January 16, 2007, divorcing the parties, awarding the mother primary physical custody of the children, and fashioning a property division. The father subsequently filed a postjudgment motion; that motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The father timely appealed.
At the outset, we note that when a trial court receives ore tenus evidence its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This "presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor." Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ. App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).
The evidence presented to the trial court revealed the following pertinent facts. At the time of the final hearing, the father was 36 years old and the mother was 34 years old. This is the second time that the parties have been married to one another. The parties' first marriage began in 1993 and ended in divorce in 1997.
The father is employed as a truck driver. Financial statements generated by the father's employer were admitted into evidence at trial and revealed that the father earned a gross income of $45,159.30 in 2004, $37,613.84 in 2005, and $37,084.59 as of December 3, 2006. The father testified that he had a retirement account with his employer with an estimated value of $40,000.
The father testified that he lives with his parents because he cannot afford to live on his own. The father explained that he paid his parents approximately $300 a month as rent. The father testified that he also paid a portion of his parents' utility expenses; the record does not indicate the *1169 amount the father paid for the utilities. The father testified that he spent approximately $75 to $80 on groceries for himself, in addition to the food provided to him by his parents. It is unclear from the record if the father spent that amount on groceries on a weekly or monthly basis.
The father testified that he had two bank accounts at the time of trial, which had a combined balance of approximately $425. He also testified that two months after he and the mother separated, he had withdrawn $4,000 from his checking account to pay bills. The father stated that he has no credit cards in his name.
The father explained that he paid child support and the mortgage payments on the parties' marital home until he "ran out of money." The father testified that he did not pay child support from November 2004 to early August 2005. According to the father, the mother declined to accept child support that he attempted to pay her. The father testified that he made payments on the parties' marital home until October 2005, when he filed for bankruptcy. The father explained that he has no money with which to make payments to the mother. The father testified that he had received a final bankruptcy order; the record does not contain a copy of that order.
At one point during the parties' marriage, the parties owned three vehicles: a 2002 Kia Rio automobile, a 1997 Chevrolet pick-up truck, and a 1976 Chevrolet automobile. The father testified that both the 2002 Kia Rio and the 1997 Chevrolet pick-up truck had been repossessed. The father explained that he sold the 1976 Chevrolet automobile and that, at the time of trial, he was driving a vehicle owned by his father. The mother does not own a vehicle.
The mother is employed at an Arby's fast-food restaurant. The mother testified that as of the date of the final hearing she had earned $5,178.35 in gross income in 2006. The mother explained that she worked part-time because she could only work when the children were in school. The mother testified that one of the parties' children suffers from attention deficit disorder and a pervasive developmental disorder that requires special attention. The mother testified that, at the time of trial, she had one bank account with a balance of approximately $80. The mother stated that she has no credit cards in her name and that she has no savings account.
The mother testified that the parties' marital residence was a mobile home that had been conveyed to her as a part of the property settlement from the parties' 1997 divorce and that she owned the land on which the mobile home was located. The mother testified that the mobile home had an appraised value of $27,500 but that she owed approximately $26,000 on the mobile home. The mother stated that the monthly mortgage payment on the mobile home is $253.37. According to the mother, the father had not paid the mortgage payment on the mobile home in the 14 months preceding the trial and, she said, he had not paid child support from December 2004 to August 2005.
The mother claimed that the father had damaged the mobile home on two different occasions. The mother explained that the father had kicked in the front door of the mobile home to gain access to his belongings when she was not in the home. According to the mother, the father repaired the front door following that incident. The mother testified that the father had kicked in the same door a second time but that he did not repair the door after the second incident. The mother submitted into evidence at trial a copy of a bill for the repair of the door indicating that she paid $409.59 to have the door repaired.
*1170 In its January 16, 2007, divorce judgment, the trial court awarded the mother primary physical custody of the parties' children and ordered the father to pay child support in the amount of $905 each month. The trial court found that the father owed $5,120 in a child-support arrearage, and it ordered the father to pay $100 per month toward the satisfaction of the arrearage. The trial court awarded the mother the marital home. The trial court found the father in arrears to the mother for payments the father had failed to pay on the marital residence from November 2005 to December 2006, and it ordered the father to pay $3,293.81 to the mother based on that arrearage. The trial court further ordered the father to pay $409.59 for the repair of the door to the marital residence, and it ordered the father to pay $1,500 toward the mother's attorney fees. The trial court awarded the father his retirement account, subject to a lien "until such time as the [father's] child-support arrearage and mobile-home payments have been paid in full."
On appeal, the father contends that the trial court exceeded its discretion when it denied his motion to recuse. In response, the mother contends on appeal that the issue is barred by the doctrine of res judicata based on this court's denial of the father's earlier petition for a writ of mandamus addressing the same issue.
"Alabama law is clear: `"[T]he denial [of a petition for a writ of mandamus] does not operate as a binding decision on the merits."' Ex parte Shelton, 814 So.2d 251, 255 (Ala.2001) (quoting R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala.1994)). `[B]ecause of the extraordinary nature of a writ of mandamus, the denial of relief by mandamus does not have res judicata effect.' Cutler v. Orkin Exterminating Co., 770 So.2d 67, 69 (Ala.2000); see also Bedsole v. Goodloe, 912 So.2d 508, 516 n. 4 (Ala. 2005) (noting `that "without ordering an answer and briefs and without issuing an opinion, [the denial of a petition for the writ of mandamus] cannot have res judicata effect on subsequent proceedings in light of the extraordinary nature of the writ of mandamus"' (quoting R.E. Grills, 641 So.2d at 229) (alterations in original))."
EB Inv., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502, 510 (Ala.2005). Therefore, we will address the father's argument as to this issue.
"A trial judge's ruling on a motion to recuse is reviewed to determine whether the judge exceeded his or her discretion. See Borders v. City of Huntsville, 875 So.2d 1168, 1176 (Ala.2003). The necessity for recusal is evaluated by the `totality of the facts' and circumstances in each case. [Ex parte] Dothan Pers. Bd., 831 So.2d [1,] 2 [(Ala.2002)]. The test is whether `"facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge."' In re Sheffield, 465 So.2d 350, 355-56 (Ala.1984) (quoting Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala.1982))."
Ex parte George, 962 So.2d 789, 791 (Ala. 2006). "The burden of proof is on the party seeking recusal. Prejudice on the part of a judge is not presumed." Ex parte Cotton, 638 So.2d 870, 872 (Ala.1994), abrogated on other grounds, Ex parte Crawford, 686 So.2d 196 (Ala.1996).
In his motion to recuse, the father alleged that the trial judge had accepted a campaign contribution in the amount of $2,000 from the firm that employed the mother's counsel. The father further alleged that counsel representing him at trial was a candidate against the trial judge *1171 in an upcoming election.[1] The father surmised in his motion that "based on the foregoing, the impartiality [of the trial judge] might reasonably be questioned. Furthermore, [the trial judge] may have a personal bias or prejudice concerning the [father's] counsel."
Canon 3.C.(1), Alabama Canons of Judicial Ethics, states, in pertinent part:
"(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
"(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."
In Ex parte Melof, 553 So.2d 554 (Ala. 1989), abrogated on other grounds by Ex parte Crawford, 686 So.2d 196 (Ala.1996), our supreme court held:
"`Recusal is required ... when the facts are such that it is reasonable for a party, for members of the public, or for counsel to question the impartiality of a trial judge.' (Citations omitted.) Bryars v. Bryars, 485 So.2d 1187 (Ala. Civ.App.1986). However, a mere accusation of bias that is unsupported by substantial fact does not require the disqualification of a judge. Id. at 1189; Ex parte Balogun, 516 So.2d 606, 609 (Ala.1987); Medical Arts Clinic v. Henry, 484 So.2d 385 (Ala.1986); Ross v. Luton, 456 So.2d 249 (Ala.1984). The test is whether a `"person of ordinary prudence in the judge's position knowing all of the facts known to the judge find[s] that there is a reasonable basis for questioning the judge's impartiality."' (emphasis added). In re Sheffield, 465 So.2d 350, 356 (Ala.1984), quoting Thode, The Code of Judicial Conduct-The First Five Years in the Courts, 1977 Utah L.Rev. 395, 402."
Ex parte Melof, 553 So.2d at 557.
The father did not meet his burden of proving the existence of bias or prejudice on the part of the trial judge in this case. The father's motion to recuse consists of mere supposition that the trial judge "may" have a personal bias or prejudice concerning counsel for the father. In his motion to recuse, the father does not refer to any specific instances demonstrating bias or prejudice on the part of the trial court. The father's mere accusations are unsupported by substantial fact. See Ex parte Melof, supra. "Canon 3C(1) does not require disqualification upon mere allegations of bias that are not supported by substantial fact; and the party seeking recusal must come forward with evidence establishing the existence of bias or prejudice." Blankenship v. City of Hoover, 590 So.2d 245, 251 (Ala.1991).
In Ex parte McLeod, 725 So.2d 271 (Ala. 1998), our supreme court granted certiorari review to address "whether a new trial is required when a trial judge fails to disclose to a party before her court a campaign contribution made to her by the opposing party." 725 So.2d at 272. In Ex parte McLeod, one of the defendants contributed $200 to the trial judge's campaign for election to a state appellate court. The trial judge reported the contribution to the secretary of state pursuant to the Fair Campaign Practices Act, §§ 17-22A-1 to 23, Ala.Code 1975. Seven months after the trial court reported the contribution, it entered the judgment in the case. After the trial court entered its judgment, the plaintiff filed a postjudgment motion based, in part, on the campaign contribution made by one of the defendants while *1172 the case was pending. The trial court denied the postjudgment motion.
On review, our supreme court held that a new trial was not required as a result of the trial judge's failure to disclose to the plaintiff the campaign contribution made to the trial judge by one of the defendants. In so holding, the supreme court recognized that the trial judge's failure to directly disclose to the plaintiff the contribution in no way deprived the plaintiff of the opportunity to discover any possible campaign contributions made by the defendant. 725 So.2d at 272-73. Our supreme court explained:
"If a judge failed altogether to publicly disclose the contributions she had received, or if she actively concealed them, then an appearance of impropriety would exist. But the judge in this case publicly reported the contribution and in no way attempted to cover up the fact that [the defendant] had made a contribution to her."
Ex parte McLeod, 725 So.2d at 273.
In Reach v. Reach, 378 So.2d 1115 (Ala. Civ.App.1979), the husband in a pending divorce action moved the trial judge to recuse himself because the husband's attorney had been a political opponent of the trial judge at the time the trial judge had last run for office. Further, the husband had served as his attorney's campaign manager during that election. Reach, 378 So.2d at 1117. The trial court denied the motion to recuse and the husband appealed. On appeal, this court stated that Canon 3.C.(1) provides "that a judge should recuse himself in a proceeding in which his impartiality might reasonably be questioned in instances where he has personal bias or prejudice concerning a party." Reach, 378 So.2d at 1117. However, "[s]uch prejudice is not presumed." Id. Moreover, "it is incumbent on the moving party to prove that the bias is of a personal nature." Id.
In the instant case, the father alleges in his motion to recuse the existence of a campaign contribution to the trial judge from counsel for the mother's firm, but the father does not go further to set forth evidence of bias based on the campaign contribution. Likewise, the father alleges that his attorney's candidacy against the trial judge renders the trial judge impartial, but he fails to set forth evidence of bias based on his attorney's candidacy against the trial judge. Our review of the record does not reveal evidence of bias or prejudice on the part of the trial judge, or that the trial court attempted in any way to conceal the campaign contribution from the mother's attorney. The record indicates that the trial court ruled in favor of the father when it granted his motion to vacate its December 22, 2004, divorce judgment. In light of the foregoing, the trial court's denial of the father's motion to recuse is due to be affirmed.
The father also purports to raise on appeal the issue whether § 12-24-1 and § 12-24-2, Ala.Code 1975, are enforceable and constitutional. Sections 12-24-1 and 12-24-2, respectively, address the recusal of a justice or judge on the basis of campaign contributions and the mandatory filing of disclosure statements concerning campaign contributions. The father does not present an argument addressing the merits of the issue on appeal. "Failure to argue an issue, with citation to applicable authority, is tantamount to a waiver of that issue on appeal." Cain v. Howorth, 877 So.2d 566, 584 (Ala.2003) (citing Ex parte Riley, 464 So.2d 92 (Ala.1985)). Thus, we will not consider this issue on appeal.
The father further contends that the trial court exceeded its discretion when it entered its January 16, 2007, judgment. Specifically, the father challenges those *1173 portions of the trial court's judgment that require him to pay a child-support arrearage in the amount of $5,120 and to pay $1,500 toward the mother's attorney fees.
The determination of a child-support arrearage and how any arrearage should be paid are matters left to the discretion of the trial court. Abel v. Abel, 824 So.2d 767, 768 (Ala.Civ.App.2001). Absent a showing that the trial court exceeded its discretion, the trial court's judgment will not be reversed. Id.
The father admitted at trial that he had failed to pay court-ordered child support from November 2004 to August 2005. However, the father contends on appeal that he paid over $1,800 in child support in June 2005 and that, therefore, he does not owe $5,120 in child-support arrearage as determined by the trial court. In his brief on appeal, the father refers to an exhibit attached as an appendix to his brief showing two payments made in June 2005 totaling $1,858. It is well settled that a record on appeal cannot be supplemented or enlarged by the attachment of an appendix to an appellant's brief. Goree v. Shirley, 765 So.2d 661, 662 (Ala.Civ.App. 2000); TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). Because we are limited in our review to the record on appeal and because the record indicates that the father failed to pay child support for approximately 10 months, we cannot say that the trial court exceeded its discretion when it ordered the father to pay $5,120 in child-support arrearage.
The father challenges the trial court's award of an attorney fee to the mother, arguing that the mother presented no evidence of the time her counsel expended representing her at trial.
"It is well settled that the award of an attorney fee in a divorce action is a matter within the sound discretion of the trial court. Slater v. Slater, 587 So.2d 376 (Ala.Civ.App.1991); Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App. 1986). In determining whether to award an attorney fee, the trial court should consider the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation. Id."
Walls v. Walls, 860 So.2d 352, 359 (Ala.Civ. App.2003). Further, "a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee." Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996)(citing Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986)).
The evidence in this case indicates that the father's monthly income exceeds the mother's monthly income by approximately $3,000. Although the father testified that his funds were limited, the father presented evidence indicating that he had minimal monthly expenses. The mother, however, presented evidence indicating that she earned $423 a month and that her ability to earn income had diminished with the responsibility of caring for the children while they were not in school. Given the disparity in the parties' respective incomes and the father's ability to earn more income than the mother, the trial court could have concluded that an award of an attorney fee in favor of the mother was proper. Therefore, we cannot say that the trial court exceeded its discretion when it ordered the father to pay $1,500 toward the mother's attorney fees.
The father also argues on appeal that the trial court erred when it placed a lien on his retirement account even though the parties had not been married for at least 10 years. See § 30-2-51(b)(1), Ala. Code 1975 (limiting the consideration of retirement benefits as part of spouse's estate *1174 to situations in which the parties were married for at least 10 years). In its judgment, the trial court found as follows regarding the father's retirement account:
"The [father] shall be vested with and the [mother] shall be divested of all right, title and interest in and to the [father's] retirement account. A lien shall be placed against the [father's] retirement account until such time as the [father's] child-support arrearage and the mobile-home payments have been paid in full. In the event that the [father] removed any monies from his retirement account, the [father] will have to pay the arrearage for child support and the arrearage for the mobile-home payment from any proceeds that he receives from his retirement to the [mother]."
In support of his contention on appeal, the father cites only this court's decision in Arnold v. Arnold, 977 So.2d 501 (Ala.Civ. App.2007). However, our decision in Arnold does not apply in this case. In Arnold, the trial court entered a judgment divorcing the husband and the wife and ordering, among other things, the husband to pay the wife $400 per month for one year. After the wife filed a postjudgment motion, the trial court amended its judgment to award the wife $750 a month for three years. The husband appealed and argued that the trial court had improperly considered his retirement benefits as a source of income when ordering him to pay alimony. 977 So.2d at 508. This court affirmed the judgment of the trial court on the basis that the record did not indicate that the trial court had considered the husband's retirement benefits when it increased the wife's periodic-alimony award. Arnold, 977 So.2d at 509.
In the instant case, we are asked to decide whether the trial court erred by placing a lien on the father's retirement account. The father argues on appeal that the § 30-2-51(b)(1), Ala.Code 1975, limits the consideration of retirement benefits as an asset subject to division to situations in which the parties were married for at least 10 years. Although the father is correct in his statement of the law and although the record clearly supports a conclusion that the parties were married for less than 10 years, the trial court's judgment in this case did not award the mother a portion of the father's retirement benefits. Rather, the judgment provided a method by which the trial court could enforce its earlier pendente lite orders requiring the father to pay child support and monthly mortgage payments on the marital home.
The father cites no caselaw in support of his contention that the trial court erred by placing a lien on his retirement benefits. Even though it is not the function of this court to perform an appellant's legal research, McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992); Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992), our research reveals no caselaw in support of the father's contention. Accordingly, we affirm as to this issue.
Finally, the father contends that the trial court exceeded its discretion by ordering him to reimburse the mother for unpaid mortgage payments in the amount of $3,293.81 after he had filed for bankruptcy. Specifically, the father argues that the bankruptcy discharge applied to the mortgage payments because those payments were dischargeable in bankruptcy. The record contains no documentary evidence pertaining to the father's bankruptcy. However, the father and the mother both testified that the father had filed for bankruptcy in October 2005.
In Laminack v. Laminack, 675 So.2d 479, 481 (Ala.Civ.App.1996), this court stated:

*1175 "`As a general rule, court ordered alimony, maintenance, and support are excepted from discharge in bankruptcy.' Hudson v. Hudson, 634 So.2d 579, 580 (Ala.Civ.App.1994); Ex parte Henderson, 574 So.2d 830, 831 (Ala.Civ. App.1990). This exception evolves from the need of the debtor to support his or her dependents and yet obtain a fresh start in financial matters. Id.; In re Haney, 33 B.R. 6 (Bankr.N.D.Ala.1983). It is well established that support obligations are not dischargeable in bankruptcy, but divisions of property not in the nature of support are dischargeable. Pressnell v. Pressnell, 519 So.2d 536, 537 (Ala.Civ.App.1987). `[A]limony in gross and property divisions are dischargeable debts.' Gould v. Gould, 586 So.2d 938, 939 (Ala.Civ.App.1991)."
In order for an award to constitute a property settlement and be dischargeable in bankruptcy, the time for payment must be certain and the right to payment must be vested and not subject to modification. Segers v. Segers, 655 So.2d 1014, 1016 (Ala. Civ.App.1995).
The record indicates that on June 16, 2005, the trial court ordered the father to pay the mortgage payments on the parties' marital home during the pendency of the action. Testimony at trial revealed that the father had failed to comply with the order of the trial court. In its January 16, 2007, divorce judgment, the trial court found that the father had failed to make the payments on the parties' marital home as ordered and that those payments were made "in lieu of alimony support and maintenance to the [mother]." The trial court ordered the father to pay the mother $3,293.81 for the payments missed from November 2005 to December 2006.
The dispositive issue is whether the father's responsibility for paying the mortgage was more in the nature of a support obligation or more in the nature of a property division. Because the trial court ordered the father to pay the mortgage payments on a temporary basis, the father's obligation to pay the mortgage payments was subject to modification. See Segers v. Segers, supra. The trial court's order requiring the father to pay the mortgage payments was a court-ordered obligation to provide maintenance and support for the mother pending the final hearing. Because the father's obligation to pay the mortgage payments was temporary, it was more in the nature of a support obligation. As such, the obligation was not dischargeable in bankruptcy. See Pressnell v. Pressnell, 519 So.2d 536, 537 (Ala.Civ.App.1987)(recognizing that court-ordered support obligations are not dischargeable in bankruptcy). Therefore, the mortgage payments were properly included in the trial court's order, and we affirm as to this issue.
AFFIRMED.
PITTMAN, J., concurs.
BRYAN, J., concurs in the result, without writing.
MOORE, J., concurs in the rationale in part and concurs in the result, with writing.
THOMAS, J., recuses herself.
MOORE, Judge, concurring in the rationale in part and concurring in the result.
I concur in all aspects of the main opinion except that aspect addressing the issue of recusal. As to that issue, I concur in the result.
NOTES
[1] The record does not reveal the date of the "upcoming" election.