On Rehearing Ex Mero Motu
The opinion of March 24, 2000, is withdrawn, and the following is substituted therefor.
Jim Walter Homes, Inc. ("Jim Walter"); Mid-State Homes, Inc. ("Mid-State"); Best Insurers, Inc. ("Best"); and William J. Wade have filed in this Court a document styled as a petition for the writ of mandamus. We treat that document as a request for an order voiding the transfer of two cases (Sumter Circuit Court, CV-97-21 and CV-97-43) by Judge Eddie Hardaway, Jr., to Judge Richard L. Osborne. Judge Hardaway transferred the two cases to Judge Osborne after Judge Hardaway had disqualified himself from presiding over those cases.[1] We grant the petitioners' request for an order vacating Judge Hardaway's order transferring the two cases and vacating all orders entered by Judge Osborne in regard to the two cases.
On April 8, 1997, Walesther Hutchins and Charlie Hutchins filed a complaint in the Sumter County Circuit Court against Jim Walter, Mid-State, Best, and other defendants. On or about March 3, 1997, Wade filed a separate action in the Sumter County Circuit Court against Earl Singleton, Sr. Singleton filed a counterclaim against Wade and named Jim Walter, Mid-State, and Best as third-party defendants. Both cases alleged various tort theories based on improper foreclosure procedures allegedly followed by Jim Walter and Mid-State in retaliation for the plaintiffs' selection of insurance providers other than Best. Both cases were initially filed in the Seventeenth Judicial Circuit and were thus assigned to Circuit Judge Eddie Hardaway, Jr., the only circuit judge regularly sitting in that circuit. (Hereinafter, the Hutchins
case and the Wade case will be referred to jointly as the "JimWalter cases.")
When the Jim Walter cases were filed, the law firm of Copeland, Franco, Screws Gill, P.A. (the "Copeland firm"), was representing Judge Hardaway as the named plaintiff in a case styled In re: Eddie Hardaway, Jr., et al. v. Robert L. Childree,in his official capacity as Comptroller of the State of Alabama, CV-94-1396. That case was pending in the Montgomery Circuit Court. The Copeland firm was also representing Jim Walter, Mid-State, and Best in the Jim Walter cases pending before Judge Hardaway. On February 6, 1998, Judge Hardaway entered an order disqualifying himself from both Jim Walter cases, stating in his order:
 "Defendant, Jim Walter Homes, Inc.'s counsel suggested that I should recuse myself due to the fact that I am represented by a member of the law firm of Copeland, Franco, Screws Gill, which firm also represents Defendants, Jim Walter Homes, Inc., in this matter. Therefore, in order to assist in the orderly administration of justice within the Circuit and to avoid the appearance of impropriety, I hereby assign this case, pursuant to Rule 13 of the Alabama Rules of Judicial Administration, to the Honorable Richard L. Osborne, District Judge of Greene County."
The petitioners now before this Court objected to Judge Hardaway's assigning the cases to Judge Osborne after having disqualified himself in regard to them. In response to this objection, Judge Hardaway, on October 6, 1998, signed another *Page 78 
set of orders that noted his disqualification, but, this time, he ordered that the Jim Walter cases be set for a reassignment by the Administrative Office of Courts ("AOC"). The defendant Singleton moved to vacate the October 1998 orders and submitted a proposed revised order for Judge Hardaway's signature; however, Judge Hardaway did not sign that proposed order and did not rule on the motion.
Despite Judge Hardaway's second set of orders, Judge Osborne conducted a pretrial hearing on May 24, 1999. This hearing was the first proceeding Judge Osborne conducted in the Jim Walter
cases, and the petitioners here moved for Judge Osborne to recuse himself, arguing that Judge Hardaway had improperly assigned the cases to Judge Osborne. Judge Osborne denied the motion and entered an order purporting to consolidate the Jim Walter cases for trial.
Jim Walter, Mid-State, Best, and Wade now seek relief from this Court. The relief they seek is in the nature of a writ of mandamus, which is an appropriate method for challenging a trial court's denial of a motion to recuse. Crawford v. State,686 So.2d 196 (Ala. 1996). A writ of mandamus will be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Exparte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993).
This petition presents the issue whether a trial judge, who has been disqualified from presiding over a case by the Canons of Judicial Ethics, can, pursuant to Rule 13, Ala. R. Jud. Admin., appoint his successor.[2] We hold that he cannot.
Rule 13, Ala. R. Jud. Admin., vests in the presiding circuit judge of a judicial circuit the authority to temporarily assign circuit-or district-court judges to serve in the courts of that circuit, if the presiding judge deems such an assignment necessary to assist in the orderly administration of justice. Therefore, under normal circumstances, Judge Hardaway, as the presiding circuit judge in the Seventeenth Judicial Circuit, would have had the authority to assign the Jim Walter cases to Judge Osborne.
The plaintiffs in the Jim Walter cases argue that these petitioners did not object to the assignment of Judge Osborne until 15 months after that assignment had been made and, therefore, by that delay effectively waived their objection to his assignment. In support of their argument, they cite Adams v. Boardof Trustees of the University of South Alabama, 676 So.2d 1326
(Ala.Civ.App. 1996), and Phillips v. Amoco Oil Co.,799 F.2d 1464 (11th Cir. 1986). We find those cases distinguishable.
In Adams, the Court of Civil Appeals held that a party may not "lie in wait and raise the issue of recusal after learning the outcome of the proceeding." 676 So.2d at 1328. To allow a party to do so would allow that party to hear the outcome of the case and then object only if the outcome did not suit him. Likewise, in Phillips, the objecting party did not object until it had learned the court's ruling on a summary-judgment motion. 799 F.2d at 1472.
In this case, the delay was mitigated by several factors. First, the petitioners asked that their cases be sent to the AOC for reassignment when they initially requested that Judge Hardaway disqualify himself. Second, they made their formal objection to Judge Osborne's assignment the first time he conducted a proceeding in the case. Finally, and most significantly, Judge Osborne had made no ruling on any issue in this case before the petitioners made their objection on May 24, 1999. *Page 79 
Therefore, we conclude that the petitioners did not waive their objection.
Furthermore, the respondents argue that this Court, in Rossv. Lutton, 456 So.2d 249 (Ala. 1984), and the Court of Civil Appeals, in Ex parte Sanders, 521 So.2d 56 (Ala.Civ.App. 1988), and Edge v. Edge, 494 So.2d 71 (Ala.Civ.App. 1986), have upheld, under Rule 13, Ala. R. Jud. Admin., assignments made by the presiding judge of the circuit after that judge had entered an order of disqualification or recusal in regard to the case being reassigned. We find those cases distinguishable from the case now before us.
In Ross, the presiding judge recused himself; however, the judge never determined whether he was required to do so. The party requesting the recusal "made only general accusations of bias and prejudice" against the trial judge. 456 So.2d at 254-55. The same kind of accusations were also made against the new judge assigned to hear the case. The Court of Civil Appeals determined that the accusations were not sufficient to warrant recusal of the second judge. Id. Moreover, the party in Ross
asking for the recusal of the second judge did not seek the recusal until after that judge had entered several orders in the case. Although this Court upheld the assignment in Ross, this Court has not expressly upheld an assignment under the circumstances presented in this case.
In Sanders, a child-custody case, the trial judge recused himself. The presiding judge reassigned the case; the presiding judge, however, had a "personal relationship" with the father, who was seeking custody. 521 So.2d at 58. The wife objected to the assignment, based on the relationship of the presiding judge and her ex-husband. Id. at 56. This case is different from Sanders
in that, in Sanders, the Court of Civil Appeals, while suggesting that a different course of action would have been preferable, held that the presiding judge was not disqualified under the Canons of Judicial Ethics, id. at 57; in this present case Judge Hardaway entered an order of disqualification.
Finally, we note that the Edge case, likewise, does not control this present case. The Edge court deferred answering the question that is now before us, because the complaining party was held to have waived the objection by failing to raise the issue in the trial court. Id. at 72. As previously noted, the petitioners now before us did not waive the objection.
Other jurisdictions have addressed the issue whether a disqualified judge can select a successor.[3] We are persuaded by the rationale stated in McCuin v. Texas Power LightCo., 714 F.2d 1255 (5th Cir. 1983), where the United States Court of Appeals for the Fifth Circuit determined that a disqualified judge could not take part in the appointment of his successor.Id. at 1257. Like Rule 13, Ala. R. Jud. Admin., the local rules at issue in McCuin were silent in regard to the procedure to be used for reassigning a case in which the presiding judge was disqualified. Judge Rubin, writing for the court, reasoned:
 "The local rules of court for the Eastern District of Texas contain no provision for the reassignment of cases in which a judge is disqualified. Section 137 [28 U.S.C. § 137 (1976)] provides that, in the absence of such rules and orders, it is the duty of the chief judge of the district to assign cases, but patently that judge has no authority to sign such an order, or any other judicial order, pertaining to a proceeding in which he is disqualified. To permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional *Page 80 
command that the disqualified judge be removed from all participation in the case. It might, in addition, create suspicion that the disqualified judge will select a successor whose views are consonant with his. Congress intended the statutory antisepsis to be absolute in order to avoid any bacterium of impugnment."
714 F.2d at 1261.
Therefore, in order to avoid the appearance of impropriety, we hold that after a judge presiding in a particular case has been disqualified from hearing that case, under the Canons of Judicial Ethics, either voluntarily or by objection, he or she can take no further action in that case, not even the action of reassigning the case under Rule 13, Ala. R. Jud. Admin. For such a judge to make the reassignment would be contrary to Canon 3(C), because the impartiality of the reassignment might reasonably be questioned.
Although we have no basis for concluding that Judge Hardaway's reassignment of the Jim Walter cases to Judge Osborne was based on any improper motive and have no reason to believe that Judge Osborne would have acted without a full adherence to his oath, the courts of this State must avoid even the slightest appearance of impropriety. The impartiality of the courts and the citizens' confidence in that impartiality are the pillars that support our legal process.
We therefore hold that once the presiding judge of a judicial circuit has been disqualified from a case under the Canons of Judicial Ethics, either voluntarily or by objection, the appropriate procedure for initiating a reassignment of the case is as follows: In a circuit with more than one circuit judge, the presiding judge shall enter an order notifying the next senior judge within that circuit of the presiding judge's disqualification. A circuit judge who is so notified but who is also disqualified shall enter an order notifying the next senior judge within that circuit of that judge's disqualification. A circuit judge who is so notified and who is not disqualified shall become the judge to whom the case is assigned, unless that judge assigns the case to another judge within the circuit who agrees to take the case. In a circuit with only one circuit judge, if the district judge within the county in which the action is pending has been temporarily assigned by the presiding circuit judge to serve in circuit court pursuant to Rule 13, Ala. R. Jud. Admin., the circuit judge shall notify that district judge of the circuit judge's disqualification. If no judge with authority to hear the case is available in the county in which the action is pending, the case shall be referred to the AOC for assignment of a judge.[4]
Accordingly, pursuant to Amendment No. 328, § 6.02, Ala. Const. 1901, and § 12-2-7, Ala. Code 1975, authorizing this Court to issue such orders as are necessary for its general supervision of inferior courts, we vacate Judge Hardaway's February 6, 1998, orders transferring the Jim Walter cases to Judge Osborne; likewise, we vacate all orders entered by Judge Osborne in the JimWalter cases. This action leaves in place Judge Hardaway's October 6, 1998, orders notifying the AOC of his withdrawal and requesting that both cases be reassigned.
ON REHEARING EX MERO MOTU: OPINION OF MARCH 24, 2000, WITHDRAWN; OPINION SUBSTITUTED; TRANSFER ORDERS AND ORDERS ENTERED BY JUDGE OSBORNE VACATED.
Hooper, C.J., and Maddox, Houston, Cook, See, Brown, Johnstone, and England, JJ., concur.
[1] We note that Judge Osborne died while this request for relief was pending in this Court. Although Judge Osborne has died, the issue raised by this request for relief — how a successor to Judge Hardaway, for purposes of hearing the two cases, is to be selected — remains unresolved. Thus, notwithstanding Judge Osborne's death, we still must decide the question presented here.
[2] The question whether the circumstances surrounding the JimWalter cases warranted Judge Hardaway's disqualification is not before us.
[3] See United States v. O'Keefe, 128 F.3d 885 (5th Cir. 1997) (holding that a recused judge can take no further discretionary action in the case); Arnett v. State, 638 P.2d 1133
(Okla.Crim.App. 1982) (citing an Administration of Courts Rule that forbids a disqualified judge from participating in the assignment of the case); Stern Bros., Inc. v. McClure, 160 W. Va. 567,236 S.E.2d 222 (1977) (holding that a recused judge could not advise the chief justice on his assignment of the case).
[4] Because the late Judge Osborne was not the district judge within the county in which this action was pending, he could not have been assigned the case under the test announced today. *Page 81