DONALDSON, Judge.
*1165 This court's no-opinion order of affirmance issued on February 10, 2017, is withdrawn, and the following is substituted therefor.
C.C.N. ("the father") appeals from the judgment of the Mobile Juvenile Court ("the juvenile court") denying his petition to modify a custody order pertaining to A.B.S. ("the child"). We affirm the judgment.
Facts and Procedural History
The father and R.E.S. ("the mother") were in a dating relationship for approximately six months. After they ended the relationship, the mother discovered that she was pregnant. The father was initially permitted to attend prenatal appointments with the mother, but, because the parties consistently argued, the mother refused to allow the father to continue to attend. The child was born on April 24, 2009. Shortly after the child's birth, the father initiated an action in the juvenile court seeking a judgment declaring his paternity of the child and an award of custody of the child, which action was docketed as case number CS-09-5695 ("the CS case"). In February 2012, in addition to establishing the father's paternity of the child, the juvenile court awarded the parents joint legal custody and the mother sole physical custody, with the father having visitation. It is not entirely clear from the record, but it appears that the order containing that custody award was appealed to the Mobile Circuit Court ("the trial court") for a de novo review because the record was not certified as adequate, pursuant to Rule 28(B), Ala. R. Juv. P. The appeal was assigned case number DR-12-58 ("the DR case"). In March 2013, the parties entered into an agreement in the DR case pursuant to which they would have joint legal custody, the mother would have sole physical custody, and the father would have "standard visitation." The agreement was adopted as an order of the trial court in the DR case.
On December 10, 2013, the father filed in the trial court a pleading that he described as an "Instanter Motion for Modification of Custody." The trial-court clerk docketed the pleading as case number DR-12-58.01 ("the DR .01 case"). On February 7, 2014, the mother filed a motion in the DR .01 case to suspend visitation, in which she asserted that the child had disclosed that the father had sexually abused the child. The parties filed numerous additional pleadings, including motions for immediate change of custody, motions to suspend visitation, and motions for contempt. Each party made various allegations of parental alienation against the other. The mother made numerous allegations that the father had sexually abused the child and attempted to terminate the father's parental rights on three different occasions.
On June 6, 2014, after a hearing, the trial court entered an order in the DR .01 case granting pendente lite sole physical custody to the father and granting visitation to the mother. At a hearing in the DR .01 case on September 19, 2014, the assigned trial-court judge, Judge Edmond G. Naman, disclosed that he had been contacted ex parte on behalf of the mother, that he had received what he considered to be political threats related to the case, and that he believed that he needed to recuse himself.
On September 23, 2014, Judge Naman entered the following order in the DR .01 case:
"The Court having reviewed the above numbered petition, it has been ascertained *1166 that said petition should have been filed under Case Number CS 2009 5695 as the next point designator (the court notes that the above numbered case was a De Novo Appeal from the said CS 2009 5695 case when an adequate record could not be produced. The order from said case should have been entered into the Juvenile court file as the final order therein, thereby terminating the Circuit Court jurisdiction over these parties and the child who is the subject matter of the case.)
"It is therefore ORDERED, that the above numbered petition is hereby transferred to the Juvenile Court and the Clerk shall cause the same to be properly docketed. It is further ORDERED that the undersigned recuses himself in said case and the case shall be assigned to the Honorable George Brown, District Judge."
The case was then docketed in the juvenile court as case number CS-09-5695.02. It is unclear from the record whether there was a case number CS-09-5695.01. On January 15, 2015, after a hearing, the juvenile court entered an order prohibiting contact between the child and the child's maternal grandmother. The juvenile court also adopted and confirmed the previous pendente lite custody order entered by the trial court in the DR .01 case. The juvenile court opined that the December 2013 petition filed by the father had been improperly filed in the trial court and should have been filed in the juvenile court.
On September 23, 2015, the juvenile court entered another pendente lite order that, among other things, dissolved the previous order of temporary custody to the father and granted the parties joint legal and physical custody pending the final hearing. The juvenile court also ordered that the child could have no contact with certain family members of the parents.
On March 22, 2016, after multiple days of testimony, the juvenile court entered an order denying the father's petition to modify custody and finding, in part, as follows:
"The Court took extensive testimony over multiple days, and at the conclusion thereof, the Court did fail to find evidence presented sufficient to overcome the [Ex parte] McLendon [, 455 So.2d 863 (Ala. 1984),] standard and thereby warrant a modification of custody.
"Specifically, the Court finds that both the Mother/Defendant and the Father/Plaintiff have been involved in litigation concerning the child's custody almost since the time the child was born. Said litigation has taken the form of a petition for custody shortly after the child was born which was litigated extensively, and a trial de novo appeal of same which was extensively litigated, before Circuit Judge Edmond Naman, both trials resulting in a finding that the best interests of the child would be served by an award of custody to the mother with standard visitation to the father.
"Subsequent thereto, the father filed his current petition, and numerous motion hearings were conducted, counselors were assigned by Judge Naman prior to the case being reassigned to the undersigned, and temporary orders were put into place concerning the child's custody. The most recent temporary order which was put into place by the undersigned, mandated that the parents equally share the custody of the child on a week to week basis with weekly exchanges, and, that no collateral relative be allowed to have contact with the child. This order was put in place as a temporary order in [September] 2015, pending the final hearing in the matter on February 18 and February 25, 2016. The Court further ordered that the child *1167 could not be taken to a counselor without permission of the Court and the Guardian ad Litem. The Court finds that subsequent to said order no one presented any evidence that the child suffered any harm by not seeing collateral relatives, nor that the child suffered any harm by not being taken to a counselor.
"The Court finds that the extreme antagonistic behaviors presented by each parent toward the other, and as exacerbated by collateral relatives, namely grandparents, most importantly, has led to a constant instability in the child's life and a constant situation of discord. The Court finds that this condition in the child's life has existed since the time she was born, and continues to exist and therefore there is no change of circumstances in the child's life.
"The Court further finds that while it could certainly be interpreted that the mother's claims of sexual abuse at the hands of the father could amount to an attempt at alienation of the child from the father, the Court finds from the testimony of Dorothy Ward that the mother has made a real and genuine effort to accept that there was no abuse at the hands of the father and to attempt to be cooperative and to 'co-parent' the child with the ... Father. The Court further finds from Ms. Ward's testimony that the father attended 3 meetings and informed her in writing that 'he did not find it to be in his best interest' that he continue with the co-parenting counseling. The Court finds that the father has not placed the needs and interests of the child ahead of his own and that behavior has been consistent throughout the history of this case.
"The Court finds that during the course of his own testimony the father stated that he believed the mother believed he committed the acts of abuse. If the Court were to accept this then all of the acts of the mother in attempting to prevent the child from having contact with the father and in complaining to the authorities about the sexual abuse would be completely justified even if in fact the abuse didn't occur, because her belief would mandate that she attempt to protect her child in this manner.
"The Court further finds that there has been no significant evidence presented that a change of custody would benefit the child in any way whatsoever, even if a change in circumstances could be established. To the contrary, the Court finds that it is likely the parents will never cooperate with one another to co-parent the child nor will they act consistently in the best interests of the child but rather in their own perceived best interests.
"From the foregoing the Court finds that insufficient evidence has been presented which would warrant a change in custody...."
The juvenile court also reinstated the father's previous child-support obligation of $265 per month.
On April 1, 2016, the father filed a motion to alter, amend, or vacate the judgment. On April 15, 2016, the father filed a notice of appeal to this court. The juvenile court entered an order on April 20, 2016, purporting to deny the father's postjudgment motion. That motion, however, had been denied by operation of law on April 15, 2016. See Rule 1(B), Ala. R. Juv. P.
Discussion
In the September 23, 2014, order, Judge Naman purported to recuse himself and "assign" the DR .01 case to the juvenile court. The father did not raise an objection to that procedure until he filed his appellate brief. On appeal, the father argues that Judge George A. Brown, the juvenile-court *1168 judge, lacked jurisdiction to hear the case because, he asserts, a judge who recuses himself cannot name his own replacement. The mother asserts that Judge Naman's assignment of Judge Brown is not a jurisdictional defect and that the father failed to preserve the issue for appellate review.
In support of his argument, the father cites Ex parte Jim Walter Homes, Inc., 776 So.2d 76, 78 (Ala. 2000), in which our supreme court held that a judge "who has been disqualified from presiding over a case by the Canons of Judicial Ethics, [cannot], pursuant to Rule 13, Ala. R. Jud. Admin., appoint his successor." In that case, however, the defendants objected to the judge's assignment at the first proceeding in which the assigned judge presided, and the defendants filed a petition for the writ of mandamus before the assigned judge made any rulings. Id. This court has explained that a "party may not lie in wait and raise the issue of recusal after learning the outcome of the proceeding." Adams v. Board of Trs. of Univ. of S. Alabama, 676 So.2d 1326, 1328 (Ala. Civ. App. 1996). In Hornady Truck Lines, Inc. v. Howard, 985 So.2d 469, 476 (Ala. Civ. App. 2007), this court, in interpreting Jim Walter Homes, reaffirmed the principle that a party waives issues related to the purported disqualification of a trial judge if the party does not raise the objection in the trial court. See also Edge v. Edge, 494 So.2d 71, 72 (Ala. Civ. App. 1986) ("[T]he issue of a trial judge's qualification or disqualification to preside over a case cannot be raised on appeal if it was not raised before the trial court.").
In his reply brief, the father cites L.R.S. v. M.J., 229 So. 3d 772 (Ala. Civ. App. 2016), in asserting that Judge Brown, a district-court judge in the Thirteenth Judicial Circuit, was never granted proper authority to hear the case and that his orders are void for lack of jurisdiction. In L.R.S., this court held that a judgment entered by a district-court judge serving as a juvenile-court judge was void because the case did not fall within the jurisdiction of the juvenile court but, instead, fell within the jurisdiction of the circuit court. On rehearing, a majority of this court determined that a standing order under which the case was purportedly assigned, which authorized the district-court judge to function as a circuit-court judge, was invalid as an improper attempt to enlarge the jurisdiction of the district court. This court noted that, although Rule 13(A), Ala. R. Jud. Admin., authorizes the temporary assignment of judges, the standing order at issue in L.R.S." 'affect[ed] the jurisdiction of the Mobile Juvenile Court in a manner that violates the constitutional limitation on the judicial rule-making power, and, hence, we find the standing order to be void ab initio." L.R.S., 229 So. 3d at 779 (opinion on rehearing). In contrast, nothing in the record in this case suggests that the trial court's transfer of the case to the juvenile court was pursuant to the standing order at issue in L.R.S. Moreover, as explained above, the father did not preserve for appellate review any objection to any procedural irregularity in Judge Naman's transfer of the case after his recusal.
The father also argues that the juvenile court, regardless of the manner in which the judge was assigned, lacked jurisdiction to hear this matter because, he asserts, it is simply a custody dispute between parents and is therefore excluded from the juvenile court's jurisdiction. In support of his argument, the father again cites L.R.S.; however, as noted in our opinion on original submission in L.R.S., that case concerned the jurisdiction of a juvenile court to entertain an initial custody action when no finding of dependency had been *1169 made. L.R.S., 229 So. 3d at 776 ("[A] juvenile court cannot use its dependency jurisdiction to dispose of the custody of a child unless the juvenile court finds the child to be dependent."). In contrast, the case before us involves a modification of a previous juvenile-court judgment. As we noted on original submission in L.R.S., a "juvenile court does have jurisdiction to decide the parentage of a child under Ala. Code 1975, § 12-15-115(a)(6), which, by reference to the Alabama Uniform Parentage Act, Ala. Code 1975, § 26-17-101 et seq., gives the juvenile court jurisdiction to decide the custody of the subject child and to assess child support." Id. at 777. See also § 26-17-104, Ala. Code 1975 ("A circuit or district court of this state or any other court of this state, as provided by law, shall have original jurisdiction to adjudicate parentage pursuant to this chapter and may determine issues of custody, support, and visitation incidental to a determination of parentage.").
Section 12-15-115(a)(7), Ala. Code 1975, provides that the juvenile court has original jurisdiction over "[p]roceedings to establish, modify, or enforce support, visitation, or custody when a juvenile court previously has established parentage." The record indicates that the juvenile court previously entered a judgment in the CS case establishing, among other things, the child's parentage and that, in this action, the father sought to modify that judgment. According to various orders of the juvenile court, the father's petition to modify was incorrectly docketed by the trial-court clerk as the DR .01 case; as noted earlier, the initial DR case had been a de novo appeal of the CS case. Just as we noted on original submission in L.R.S. that "[t]he erroneous designation of the case as a 'CS' case did not bestow subject-matter jurisdiction on the juvenile court," 229 So. 3d at 776-77, here, too, although the trial-court clerk erroneously docketed the petition to modify as a "DR" case, the petition should have been docketed as a "CS" case, because it sought to modify a prior order of the juvenile court. Accordingly, the trial court's transfer of the case to the juvenile court is not reversible. See Ex parte N.B., 204 So.3d 887, 893 (Ala. Civ. App. 2016) (authorizing a juvenile court's transfer of a case that " 'should have been brought in another court in the same county' to the appropriate court, i.e., the circuit court" pursuant to § 12-11-11, Ala. Code 1975 (citing Ex parte E.S., 205 So.3d 1245 (Ala. 2015) )).
Finally, the father argues that the juvenile court was plainly and palpably wrong in denying his petition to modify custody. We note that the judgment was entered following trial proceedings at which evidence was presented ore tenus to the juvenile court.
" ' "A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong...." ' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ. App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. 'In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032 (Ala. Civ. App. 1981)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001). Because the mother previously had been granted sole physical custody of the child, the juvenile court was required to *1170 apply the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984).
"The law is well settled that '[a] parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon [, 455 So.2d 863 (Ala. 1984) ].' Adams v. Adams, 21 So.3d 1247, 1252 (Ala. Civ. App. 2009). The custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), requires that
" 'the noncustodial parent seeking a change of custody must demonstrate (1) "that he or she is a fit custodian"; (2) "that material changes which affect the child's welfare have occurred"; and (3) "that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child." Kunkel v. Kunkel, 547 So.2d 555, 560 (Ala. Civ. App. 1989) (citing, among other cases, Ex parteMcLendon, 455 So.2d 863, 865-66 (Ala. 1984) (setting forth three factors a noncustodial parent must demonstrate in order to modify custody)).'
" McCormick v. Ethridge, 15 So.3d 524, 527 (Ala. Civ. App. 2008). It is not sufficient for a noncustodial parent seeking a modification of custody to show that he or she is a fit custodian. Id. The noncustodial parent must prove all three McLendon factors in order to warrant a modification of custody. Id."
Walker v. Lanier, 180 So.3d 39, 42 (Ala. Civ. App. 2015).
The juvenile court specifically found that there had been no material change in circumstances and that the "extreme antagonistic behaviors presented by each parent toward the other" had existed since the child's birth. The juvenile court went on to find that, even if there had been a change in circumstances, there had been no "evidence presented that a change of custody would benefit the child in any way whatsoever." The father points to the mother's allegations of sexual abuse as amounting to parental alienation and abuse. The record indicates, however, that those allegations began before the first custodial judgment was entered and continued throughout the remainder of the proceedings in the juvenile court and the trial court. Moreover, the juvenile court specifically found that the father had engaged in similar alienating behavior. As to any disputed evidence, "the trial court is free to choose which evidence it believes and is responsible for solving any conflicts." Cale v. Littleton, 631 So.2d 1036, 1038 (Ala. Civ. App. 1993). The juvenile court's judgment is supported by the evidence, and its findings are not plainly or palpably wrong. Accordingly, we affirm the judgment.
APPLICATION GRANTED; NO-OPINION ORDER OF AFFIRMANCE OF FEBRUARY 10, 2017, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.