[This opinion has been published in *Ohio Official Reports* at 175 Ohio St.3d 1253.]

IN RE DISQUALIFICATION OF BEATHARD.

THE STATE OF OHIO *v.* LUIKART.

[Cite as *In re Disqualification of Beathard*, 2024-Ohio-3335.]

*Judges—Affidavits of disqualification—R.C. 2701.031—Affidavit granted to avoid appearance of impropriety.*

(No. 24-AP-077—Decided July 26, 2024.)

ON AFFIDAVIT OF DISQUALIFICATION in Washington Court House Municipal Court Case No. CRB 2400072.

_____

**KENNEDY, C.J.**

{¶ 1} Anthony D. Maiorano, counsel for Aaron Luikart, the defendant in the underlying criminal case, has filed an affidavit of disqualification pursuant to R.C. 2701.031 seeking to disqualify Judge Steven P. Beathard, a retired judge sitting by assignment on the Washinton Court House Municipal Court, from presiding over the case. Judge Beathard filed a response to the affidavit of disqualification.

{¶ 2} As explained below, to avoid the appearance of impropriety, the affidavit of disqualification is granted. Judge Beathard is removed from the underlying case, and the appointment of a new assigned judge to preside over the case will be addressed in a separate entry.

**Trial-Court Proceedings**

{¶ 3} Judge Susan R. Wollscheid is the only sitting judge of the Washington Court House Municipal Court.

{¶ 4} On January 11, 2024, Judge Wollscheid filed an entry appointing Judge Beathard to serve as an acting judge from May 13 through 16.

**{¶ 5}** On February 9, Luikart was charged with menacing by stalking. On February 13, an attorney identified as "Atty. Scranton" filed a notice of appearance and a demand for discovery. The next day, Judge Wollscheid presided over Luikart's arraignment. Luikart appeared with counsel and entered a not-guilty plea. On February 16, attorney Samuel Shamansky fax-filed a notice of appearance, a not-guilty plea, a demand for a jury trial, a request to be tried within time, a Crim.R. 16 demand for discovery, and a request for notice of intention to use evidence. On February 20, a pretrial conference was set for March 18, and Scranton filed a motion to withdraw as counsel. The motion to withdraw was granted on February 21.

**{¶ 6}** On March 28, Judge Wollscheid filed entries appointing Judge Beathard to serve as an acting judge from April 15 through 18 and from May 1 through 3. Also on March 28, Maiorano filed a notice of substitution of counsel. On that same date, Deputy Clerk Sandra Cardiff emailed Maiorano notices of a pretrial hearing set for April 18 and a jury trial set for May 3, dates for which Judge Beathard was appointed to serve as acting judge.

**{¶ 7}** On April 11, Maiorano filed a motion to continue the pretrial hearing and the jury trial. According to Judge Beathard, he reviewed the motion to continue while serving as acting judge on April 15 and 16, and he converted the April 18 pretrial hearing to a phone conference and notified all counsel of record. The judge asserts that the "Assignment Commissioner" told him that Shamansky or his representative had contacted the court and stated that Shamansky's firm represented Luikart, that Shamansky's firm had no knowledge of Maiorano's notice-of-substitution-of-counsel filing, and that Shamansky or his representative remained available to proceed to jury trial on May 3. The evidence submitted with Maiorano's affidavit of disqualification includes an email exchange between Maiorano and Cardiff on April 18. In his email, Maiorano stated, "I haven't received a call yet. Is this still happening?" Cardiff responded,

I'm not sure what is going on with this case, except that Judge Beathard is keeping the May 3, 2024, Jury Trial date at 8:30 a.m. An attorney from Sam Shamansky's office contacted the Court (Judge) by phone and indicated that office was still representing the defendant and that they were available for trial as previously scheduled. Later this morning, Mr. Luikart appeared with Caleb Johnson and filed a time waiver in this case.

Because of the confusion about who represented Luikart, Judge Beathard sua sponte converted the May 3 jury trial to a final pretrial hearing.

{¶ 8} On April 22 Judge Wollscheid filed an entry appointing Judge Beathard to serve as acting judge on April 30.

{¶ 9} On May 2, Shamansky filed a motion to withdraw as counsel, which was granted. Also on May 2, Maiorano subpoenaed the contents of the alleged victim's phone. On May 6, the prosecutor filed a motion to quash the subpoena.

{¶ 10} On May 7, the chief justice issued Certificate of Assignment No. 24JA2141, assigning Judge Beathard to a block of cases in the Washington Court House Municipal Court. The certificate of assignment states:

The Honorable Steven P. Beathard, a retired judge of the Fayette County Court of Common Pleas, General and Domestic Relations Division, is assigned effective May 7, 2024, to preside in the Washington Court House Municipal Court for the specific period of May 7, 2024 through August 7, 2024, to hear cases in which Judge Susan Wollscheid previously represented the individual as an independent contractor for the Ohio Public

Defenders Office, and to conclude any proceedings in which the judge participated.

**{¶ 11}** On May 13, pursuant to the entry filed on January 11, Judge Beathard served as acting judge and presided over the hearing on the prosecutor's motion to quash the subpoena seeking the contents of the alleged victim's phone. The judge granted the State's motion to quash, and a judgment entry was filed on May 14. At the end of the hearing, the following exchange occurred between Judge Beathard and counsel:

> Judge: . . . Now you're here for final pretrial. Judge Wollscheid is still on the case although I'm not sure if I'm going to stay on the case or not. But while we are here counsel, I want to get a jury trial date for Judge Wollscheid. So, got your calendars, this case was continued, I think you had a jury trial in Clark County?
>
> Maiorano:      Yes, your Honor.
>
> . . .
>
> Judge: Starting in June give me a first available Friday.
>
> Maiorano:      Friday, June 14th.
>
> Judge: June 14th, 8:30. That will be the trial date. So, 5-23 can be the final pretrial or you can pretry that today if you want with Mr. Pitstick and there is no need for final pretrial [o]n the 23rd[;] it will be up to you whether you do that today.
>
> Maiorano:      Let's have that a final pretrial on the 23rd.

**{¶ 12}** On May 23, Maiorano appeared in court for the final pretrial hearing in the Luikart case and to enter a plea in another case. According to Maiorano's affidavit of disqualification, Judge Wollscheid was on the bench and accepted a

4

plea in Maiorano's other case but she did not call the Luikart case. Maiorano stated that "[a]t the time [of the May 23 hearing], there was no request for recusal pending before the Ohio Supreme Court, and Judge Wollscheid had not recused. . . . [Maiorano] had no clue Judge Wollscheid was recusing from the matter, and [he] expected her to conduct the hearing on May 23, 2024, when [he] arrived." Maiorano does not explain in his affidavit whether he inquired about the Luikart case in court that day. On that same date, Maiorano fax-filed a motion to compel discovery and Cardiff issued two scheduling notices, one for a final pretrial hearing set for June 3 and one for a jury trial set for June 14.

{¶ 13} According to Judge Beathard, on May 23, the clerk of court contacted him and asked if he would preside over the June 3 hearing and the June 14 trial given Judge Wollscheid's recusal. Judge Beathard explained that he did not question the clerk "regarding the nature or timing of Judge Wollscheid's recusal. [He] assumed that the recusal fell within the parameter[s] of Certificate of Assignment [No.] 24JA2141."

{¶ 14} The appearance docket is devoid of any judgment entry regarding the recusal of Judge Wollscheid in the Luikart case, and Certificate of Assignment No. 24JA2141 was not filed in the Luikart case.

{¶ 15} According to Maiorano, at the final pretrial hearing on June 3, the "State produced a significant increase in witnesses and in discovery." Also, Maiorano had a jury trial beginning on June 17 in the Hamilton County Court of Common Pleas, and he believed the trial scheduled in the case before Judge Beathard would interfere with his ability to attend the trial in Hamilton County. Maiorano stated that he brought this to the attention of Judge Beathard, who presided over the hearing, and that "Judge Beathard was dismissive of [his] concerns when they were brought up."

{¶ 16} On June 5, Maiorano filed a motion to continue the June 14 jury trial, which Judge Beathard denied the following day. The judge signed the entry as

"Acting Judge." In his response to the affidavit of disqualification, the judge acknowledges that the acting-judge designation on that entry was incorrect—he had not been appointed to serve as acting judge on June 6.

{¶ 17} Maiorano claims that at that point, he was unsure which judge was presiding over Luikart's case, and he suspected that Judge Wollscheid may have recused from Luikart's case. Maiorano conducted a judicial-assignment search on this court's website and discovered Certificate of Assignment No. 24JA2141 assigning Judge Beathard to a block of cases in the municipal court. On that same date, Maiorano emailed the Supreme Court of Ohio's Judicial Assignment Program and asked whether he could be told which specific cases were in the block assignment.

{¶ 18} On June 7, Dahria Beaver, a judicial-assignment analyst, told Maiorano that the block recusal is valid for a certain period pursuant to Guidelines 4.02 and 9.01(B) of the Guidelines for Assignment of Judges. Because she did not have a "record of which cases have been used under the block," Beaver informed Maiorano that he would have to contact the local court for that information. That same day, Maiorano emailed Cardiff and asked which cases were in the block covered by Certificate of Assignment No. 24JA2141. On June 10, Wynona Detty, the clerk of court, responded to Maiorano, informing him that the block of cases assigned to Judge Beathard were cases in which Judge Wollscheid had recused because she previously represented the defendants while serving as a public defender. Detty then stated, "The Judge asked for a recusal entry several months ago and there was an oversite [sic] in my office and [the recusal entry] was not submitted to the Supreme Court so as [of] today a recusal entry was submitted to the Supreme Court [in] the above case and I received this Certificate of Assignment today." The certificate of assignment that Detty referred to was Certificate of Assignment No. 24JA2621, which assigned Judge Beathard to the Luikart case, effective June 10. According to Judge Beathard, Beaver told him on June 10 that

6

Judge Wollscheid's recusal in the Luikart case was not covered by Certificate of Assignment No. 24JA2141.

{¶ 19} On June 11, Maiorano filed this affidavit of disqualification.

**Affidavit-of-Disqualification Proceedings**

{¶ 20} R.C. 2701.031 provides that if a judge of a municipal or county court "allegedly is interested in a proceeding pending before the judge, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

{¶ 21} Maiorano alleges that Judge Beathard is biased and prejudiced against Luikart and that the judge should be disqualified to avoid an appearance of impropriety. The judge denies being biased and prejudiced against Luikart and denies that there are any grounds for his disqualification.

{¶ 22} Before addressing the allegations in the affidavit of disqualification, there is a preliminary issue to be addressed—whether Maiorano's affidavit is valid. A portion of it is not.

*Requirements of an Affidavit*

{¶ 23} This court has long held that "an affidavit must appear on its face to [be] . . . in compliance with all legal requisitions." *Benedict v. Peters*, 58 Ohio St. 527, 536 (1898). In Ohio, an affidavit is a "written declaration [made] under oath." R.C. 2319.02. As such, an affidavit is a form of written testimony. *See Wallick Properties Midwest, L.L.C. v. Jama*, 2021-Ohio-2830, ¶ 18 (10th Dist.). A party may present testimony to a court only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evid.R. 602. A witness is traditionally "'incompetent' to testify to any fact unless he or she possesses firsthand knowledge of that fact." Weissenberger, *Weissenberger's Ohio Evidence Treatise*, § 602.1 (2024); *see State v. Fears*, 1999-Ohio-111, ¶ 36

7

(testimony not based on personal knowledge held to be inadmissible). Therefore, "statements contained in affidavits must be based on personal knowledge." *Carkido v. Hasler*, 129 Ohio App.3d 539, 548, fn. 2 (7th Dist. 1998); *see* 2A C.J.S., Affidavits, § 46, at 285-287 (2023); *see, e.g.*, Civ.R. 56(E), S.Ct.Prac.R. 12.02(B)(2).

**{¶ 24}** "'Personal knowledge' is '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' " *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 26, quoting *Black's Law Dictionary* (7th Rev.Ed. 1999). It follows that "'[o]ne who has no knowledge of a fact except what another has told him cannot . . . satisfy the . . . requirement of knowledge from observation.' " *Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 1997-Ohio-327, ¶ 12, quoting 1 McCormick, *Evidence*, § 10, at 40 (4th Ed. 1992).

**{¶ 25}** The averments supporting Maiorano's allegation that Judge Beathard is biased and prejudiced against Luikart are not based on Maiorano's firsthand observation and experience. And Luikart did not file an affidavit. Instead, Maiorano attempts to testify about the relationship Luikart's father has with Judge Beathard and about conversations Luikart allegedly had with the judge when the judge's vehicle was being serviced at the Luikart family's repair shop. Because this portion of Maiorano's affidavit alleging that the judge is biased and prejudiced against Luikart is not based on personal knowledge, it fails to meet the requirements for an affidavit and is stricken.

**{¶ 26}** Having struck the allegations of bias and prejudice contained in the affidavit, this decision now addresses the allegation that the judge should be disqualified to avoid the appearance of impropriety.

*Otherwise Disqualified under R.C. 2701.031*

{¶ 27} In support of the allegation that the judge should be disqualified to avoid the appearance of impropriety, Maiorano points to the process by which Judge Beathard was assigned to the underlying case.

{¶ 28} Judge Wollscheid handled Luikart's arraignment, and Judge Beathard handled motions filed in the case that were heard on the days that Judge Wollscheid had appointed him to serve as acting judge. According to Maiorano, Judge Wollscheid had recused from the case sometime before March 27, 2024, and Judge Beathard then heard the case as acting judge in April and May pursuant to entries filed on March 28. He also presided over the Luikart case in June, but there is no entry filed by Judge Wollscheid appointing him to serve as acting judge to conduct the June 3 final pretrial hearing or to rule on the motion for a continuance on June 6. Only on June 10 did the chief justice assign Judge Beathard to hear the Luikart case because Judge Wollscheid had recused. Maiorano claims that Judge Wollscheid's appointing Judge Beathard to serve as acting judge was improper because a judge who recuses from a case may not select a successor but may only request a replacement from the chief justice. In support of his position, Maiorano cites *In re Disqualification of Kiger*, 2019-Ohio-851, and argues that the municipal court's "*de facto* appointment of Judge Beathard before seeking a formal appointment with the Chief Justice leaves the lingering appearance of impropriety" and that this "is almost the exact situation" that occurred in *Kiger*, which resulted in a judge's disqualification.

{¶ 29} In response, Judge Beathard states that he has presided in the Washington Court House Municipal Court as both an acting judge and as a retired assigned judge. The judge admits that prior to May 23, he presided in the Luikart case on days in which Judge Wollscheid had appointed him to serve as acting judge. However, on May 23, when municipal-court staff requested that he preside over the case given Judge Wollscheid's recusal, he assumed that that recusal was part of the

block of cases covered by Certificate of Assignment No. 24JA2141. The judge states that it was not until June 10 that he was informed that his assignment to the Luikart case was covered by a new certificate of assignment.

### Disqualification of a Municipal-Court Judge

**{¶ 30}** As set forth above, R.C. 2701.031 provides two specific grounds and a catchall provision for the disqualification of a municipal-court judge. Granting or denying an affidavit of disqualification turns on whether the chief justice determines that the allegations of interest, bias, prejudice, or disqualification alleged in the affidavit exist. R.C. 2701.031 and 2701.03(E).

**{¶ 31}** The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." R.C. 2701.03(B)(1). Therefore, "[a]n affidavit must describe with specificity and particularity those facts alleged to support the claim." *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

**{¶ 32}** Maiorano has sufficiently alleged one basis for Judge Beathard's disqualification—the judge should be disqualified to avoid the appearance of impropriety.

**{¶ 33}** An appearance of impropriety is not among the grounds for disqualification specified in R.C. 2701.031. However, a judge "otherwise is disqualified" under R.C. 2701.031 when none of the express bases for disqualification—interest, relation to a party, bias, or prejudice—apply but other grounds for disqualification exist. *See generally In re Disqualification of Schooley*, 2023-Ohio-4332, ¶ 19 (citing examples of when a judge was otherwise disqualified). Although the statute speaks in terms of *actual* bias and prejudice, it has long been recognized that "even in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety." *In re Disqualification of Crawford*, 2017-Ohio-9428, ¶ 6.

{¶ 34} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is . . . an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 2004-Ohio-7359, ¶ 8. "The reasonable observer is presumed to be fully informed of all the relevant facts in the record—not isolated facts divorced from their larger context." *In re Disqualification of Gall*, 2013-Ohio-1319, ¶ 6.

{¶ 35} For the reasons explained below, Judge Beathard is disqualified to avoid the appearance of impropriety.

### Analysis

{¶ 36} Article IV, Section 1 of the Ohio Constitution states that "[t]he judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and *such other courts inferior to the supreme court as may from time to time be established by law*." (Emphasis added.) The General Assembly exercised the power to create statutory courts in enacting R.C. 1901.01(A), which establishes the municipal courts of this State, including the Washington Court House Municipal Court. This court has long recognized that "[t]he several municipal courts of the state of Ohio are creatures of statute, and their jurisdiction and powers are only such as are conferred by statute." *State ex rel. Finley v. Miller*, 128 Ohio St. 442, 443 (1934).

{¶ 37} Relevant here, R.C. 1901.09(A) provides that "[i]n a municipal court having only one judge, that judge shall be designated as both the presiding judge and the administrative judge," and Section 6 of the Guidelines for Assignment of Judges imposes duties on the administrative judge when an assigned judge is sought because of a recusal.

{¶ 38} Within the statutory framework, the General Assembly also established the compensation of municipal-court judges, R.C. 1901.11, the right of municipal-court judges to participate in group healthcare coverage, R.C. 1901.111,

and the requirement that a municipal-court judge have not less than 240 days of open session unless all business of the court is disposed of sooner, R.C. 1901.12. The General Assembly further grants municipal-court judges 30 days of vacation each calendar year. *Id.*

**{¶ 39}** Lastly, in addition to establishing the benefits afforded to and the time requirements of municipal-court judges, the General Assembly authorizes the judge of a single-judge municipal court to appoint a substitute judge—an "acting judge"—in limited circumstances. R.C. 1901.121(A)(2)(a). An acting judge may be appointed when the municipal-court judge is temporarily absent for a reason *other than* a vacancy in office, incapacity, or unavailability due to disqualification, suspension, or recusal. R.C. 1901.121(A)(2). But when those specific circumstances are present, only the chief justice has the authority to assign a judge. R.C. 1901.121(A)(1).

**{¶ 40}** Jud.Cond.R. 2.11(A) establishes when a judge must recuse from a case. Upon recusal, the judge may take no further action in the case except those actions that the "rule of necessity" requires. Jud.Cond.R. 2.11, Comment 3.

**{¶ 41}** This court has acknowledged that judicial "assignments must be free from the appearance of impropriety." *Brickman & Sons, Inc. v. Natl. City Bank*, 2005-Ohio-3559, ¶ 21. And as several state supreme courts have observed, it would be improper to allow a judge who voluntarily recuses from a case to participate in selecting his or her replacement. *See Stern Bros. v. McClure*, 160 W.Va. 567, 576 (1977); *Beckord v. Dist. Court of Larimer Cty. in Eighth Judicial Dist.*, 698 P.2d 1323, 1329, fn. 7 (Colo. 1985); *Ex Parte Jim Walter Homes, Inc.*, 776 So.2d 76, 80 (Ala. 2000). It has been recognized that "there is a potential for reducing public confidence in the judiciary when a disqualified judge is allowed to name a successor judge." *Ferry v. State*, 245 Ga. 698, 699 (1980). Indeed, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). Therefore, "proper procedure ordinarily requires that a judge should not attempt to intervene

in the selection of his successor—much less assign the case to another judge." (Footnote omitted.) Flamm, *Judicial Disqualification*, § 22.4, at 653 (2d Ed. 2007).

{¶ 42} The Guidelines for Assignment of Judges, first established by the late Chief Justice Thomas J. Moyer, build on the Code of Judicial Conduct, the statutory limitations of a municipal-court judge to appoint an acting judge, and the prohibition against a recused judge selecting his or her successor. The Guidelines require that when a judge of a single-judge court recuses from a case, the administrative judge of that court must enter a request for the assignment of a judge into the Interactive Generator of Online Requests ("IGOR"). Guideline 6.01(A) and (C). When the request is entered into IGOR, the administrative judge is required to upload a file-stamped copy of the judgment entry of recusal. Guideline 6.01(A). And in keeping with the common ethical standards established not only in Ohio but nationwide—that a recused judge is prohibited from selecting his or her successor—the Guidelines strictly prohibit the administrative judge from requesting the assignment of a specific judge. Guideline 6.01(B).

{¶ 43} Maiorano's affidavit calls into question Judge Beathard's authority to serve on the Luikart case prior to June 10, the effective date of Certificate of Assignment No. 24JA2621. Maiorano avers that Judge Wollscheid recused from the Luikart case prior to March 27, 2024, the day before Judge Wollscheid appointed Judge Beathard to serve as acting judge for dates in April and May. That averment is supported by the clerk's email to Maiorano, which states that Judge Wollscheid had recused "several months" before June 10, the date that the chief justice assigned Judge Beathard to the Luikart case. Because Judge Wollscheid lacked the authority to choose her own successor following her recusal, Judge Beathard, through no fault of his own, was without power to conduct hearings and rule on motions filed in Luikart's case after the recusal but prior to June 10.

{¶ 44} That includes June 3, when the final pretrial hearing was held, and June 6, when Luikart's motion for continuance was denied. At those times, Judge

Wollscheid, as the administrative judge of the court, had not entered a judgment of recusal in the Luikart case and she had not made a request for the assignment of a judge in IGOR, nor had the chief justice issued a certificate of assignment appointing Judge Beathard to the case. In fact, Judge Wollscheid's entries appointing Judge Beathard to serve as acting judge in the municipal court did not include appointments for June 3 or 6. Instead, the clerk of the municipal court contacted Judge Beathard and improperly asked him to preside on those dates, given the sitting judge's recusal, when it was the chief justice who had the sole authority to assign a judge to the case. *See* R.C. 1901.121(A)(1). Importantly, the effective date of Certificate of Assignment No. 24JA2621 was June 10.

**{¶ 45}** This record shows that Judge Beathard's authority to preside over the final pretrial hearing on June 3 or rule on the motion for a continuance on June 6 was based solely on the clerk's request that Judge Beathard preside over the Luikart case, a case that the clerk asserts the trial judge had recused from. But again, only the chief justice—not the administrative judge or the clerk—had the authority to assign Judge Beathard to the case.

**{¶ 46}** The failure of an administrative judge to follow proper procedures to request the assignment of a judge is not among the reasons to grant an affidavit of disqualification. The focus of an affidavit-of-disqualification proceeding is on the behavior or conduct of the judge presiding in the case. However, the chief justice has recognized that pursuant to R.C. 1901.121, "when a judge of a single-judge municipal court is disqualified or has recused, the judge must request the chief justice to assign a visiting judge to the case; the judge may not appoint an acting judge." *Kiger*, 2019-Ohio-851, at ¶ 5. And the chief justice has noted that "[i]mproper judicial assignment may create the appearance of impropriety and 'may be grounds for disqualification.' " *In re Disqualification of Celebrezze*, 2023-Ohio-4383, ¶ 100, quoting *In re Disqualification of Gaul*, 2020-Ohio-1531, ¶ 6. And when a recusing judge selects his or her own successor, it is necessary to

disqualify the assigned judge "to avoid any such appearance of impropriety." *Kiser* at ¶ 8; *see also Celebrezze* at ¶ 112.

{¶ 47} As stated above, Judge Beathard is not responsible for the administrative failures that occurred in the municipal court; however, a reasonable and objective observer, knowing the relevant facts, may have serious doubts about the impartiality of future proceedings if Judge Beathard were to remain on the case, since the judge who recused from the case originally appointed him as her successor. *See Lewis*, 2004-Ohio-7359, at ¶ 8 ("A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality.").

{¶ 48} Therefore, to allay any concerns about the fairness and integrity of the proceedings and to ensure to the parties and the public the unquestioned neutrality of the trial judge, Judge Beathard will no longer preside over Luikart's case.

## Conclusion

{¶ 49} The affidavit of disqualification is granted. The assignment of a judge to preside over the underlying case will be addressed in a separate entry.

_____